1  LAW OFFICE OF RICCI & SPROULS
   Attorneys at Law
2  445 Washington Street
   San Francisco, California 94111
3  (415) 391 2100
   FAX (415) 391 4678
4  FRANK P. SPROULS State Bar #166019
   Attorney for Petitioner
5

6              UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9                                    CV 08      2171

10     Ismael Alfaro              REQUEST FOR DECLARATORY
                                  JUDGMENT REGARDING
11     Petitioner/Appellant       PETITIONER'S *PRIMA FACIE*
                                  ELIGIBILITY FOR US CITIZENSHIP
12     v.                         {Hernandez de Anderson v.
       Michael MUKASEY
13     ATTORNEY GENERAL OF THE UNITED   Mukasey, 497 F.3d. 927, 933
       STATES AND
14     David Still,               (9th Cir. 2007)
       Acting District Director, San
15     Francisco Office, U.S.
       IMMIGRATION AND NATURALIZATION
16     SERVICE
       Respondent.
17

18

19

20                      **Prefatory Statement**

21

22
           This is an immigration case with an extremely long and
23
   involved procedural and legal history.
24
           However, the precise issue can be distilled into a single
25
   question - is the Petitioner *prima facie* eligible to apply for

United States citizenship even though he is currently in Removal proceedings?

**I.    The Parties**

The Petitioner is a Lawful Permanent Resident of the United States and he has been so for nearly forty years, having been granted Residency in 1969.(Exhibit A)

He is currently in Removal Proceedings based on a 1979 conviction under California Penal Code 264.1. (Exhibit A)

The Respondent is the Attorney General of the United States. He has delegated authority over the conduct of "Removal Hearings" to the Office of the District Counsel in San Francisco, CA.

**II.   Jurisdiction**

Jurisdiction lies under the umbrella authority of the Declaratory Judgment Act, 28 U.S.C. 2201 (a).

Indeed, the Ninth Circuit has specifically held that this is the proper procedural avenue for any similarly situated alien.

When and alien is "Removal Proceedings" and he wishes to apply for Citizenship, the Government must affirmatively communicate to the Judge that the Respondent is prima facie eligible or the alien needs to obtain a Declaratory Judgment from a District Court. De Hernandez, supra at 933, quoting Matter of Cruz, 15 I& N Dec. 236 (BIA 1975).

**III. VENUE**

Venue is proper insofar as the Petitioner's case is currently with the Executive Office for Immigration Review (Office of the Immigration Judge) in San Francisco, CA.

<div align="center">

**PROCEDURAL HISTORY**
</div>

**I. ELOY IMMIGRATION COURT AND ARIZONA DISTRICT COURT HEARINGS**

The Respondent is an "arriving alien" in proceedings brought on January 12, 2004 in Eloy, AZ. (Exhibit A)

His former counsel filed a Motion to Terminate proceedings based on his prima facie eligibility for Naturalization. (Exhibit B)

The matter was set for Master Hearing and the Petitioner's counsel Steve Coughlin, who resides in San Francisco, instructed local counsel to appear for him and to simply set a date for a hearing where the Motion to terminate would be meaningfully addressed.

In addition to his own testimony, Respondent contemplated that his Lawful permanent Resident wife would testify as well as his United States citizen children.

1    Instead, counsel was told simply that the Motion was denied

2  – no hearing, no explanation and no meaningful appeal record.

3  (Exhibit C)

4    The transcript reveals that there was no hearing at all on

5  the Motion to Terminate. (Exhibit C)

6    Indeed, there is not even an on-the-record colloquy between

7  the parties as to the relative merits of the Motion.

8    In the decision the Immigration Judge simply states that,

9  "having considered all of the evidence before it, is denying the

10  Motion to Terminate." (Exhibit D)

11

12    The Respondent, through current counsel, then filed a Writ

13  of Habeas Corpus in the Phoenix District Court. (Exhibit E)

14    Respondent made two separate claims, one, (not relevant here)

15  was that he was unconstitutionally deprived of his liberty by

16  virtue of his being held in Mandatory Custody as an "arriving

17  alien" and secondly, that he was denied due process of law when

18  the Immigration Judge failed to conduct a hearing or meaningfully

19  consider any evidence pursuant to the Petitioner's Motion to

20  Terminate Removal proceedings to apply for United States

21  Citizenship.

22

23

24

25

**A. PETITIONER WAS DENIED DUE PROCESS OF LAW BY THE IJ IN ELOY, AZ**

It is one of the anomalies of Immigration law that one can be eligible for citizenship on the one hand and ineligible for any relief on the other.

The only avenue for relief for a long time Resident is found at INA 240A (a) which requires seven years residency, however, the alien must "not have been convicted of an aggravated felony."

Next, while it is true that he committed the offense **twenty-one years** before the effective date of IIRAIRA, the law is retroactively applied.

This is so because while it is true that the Supreme Court has held that IIRAIRA cannot be apply retroactively to an alien who **pleads** guilty prior to the effective date of the Act, it does not apply to an alien like Respondent who proceeded to a jury trial. <u>Armendiaz-Montaya v. Sonchik</u>, 291 F.3d. 1116, 1121-1122 (9th Cir. 2002)

It was thus clear that the Petitioner's only avenue for relief was the Motion to terminate proceedings and he was denied due process in the Immigration Judge's refusal to even **_conduct_** a hearing or explain or justify his summary denial.

**i. Legal standard for the denial of due process**

It has been unambiguously held that aliens in deportation proceedings are entitled to both substantive and procedural due process right under our constitution. Reno v. Flores, 507 U.S. 292, 306 (1993). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation hearings."

It has also been held that the due process is offended where the Immigration Service, ignores its own precedent and ignores specific statutory grounds. Brownell v. We Shung 352 U.S. 180 (1956); Kwong Hai Chew v. Colding, 344 U.S. 590, 596 (1953).

Next, in the specific context of a Deportation/Removal hearing, due process demands that an alien facing deportation is entitled to a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf. Sanchez v. INS, 164 F.3d. 448, 450 (9th Cir. 1990); Colemenar v. INS 210 F. 3d. 967, 975 (9ᵗʰ Cir. 200)

In the particular case, it was piercingly obvious that the Respondent was denied due process in the sense that he received *no hearing at all* and he had **no opportunity** to present evidence on his behalf.

1    Next, it was abundantly clear that the Petitioner had a
2  right to **meaningful** administrative review to the Board of
3  Immigration Appeals.

4    However, it was argued that that Respondent had been denied
5  the right to meaningful appellate review because both counsel
6  and the BIA are left to speculate as to **why** the Motion was
7  denied.

8    Was it because, the IJ felt that the crime was so heinous
9  that the intervening 25 years of law abidance did not purge the
10 taint?

11   Was it because Petitioner had not presented sufficient
12 hardship to his Lawful Resident wife and United States citizen
13 children?

14   Was it because he did not credit the letters of support
15 from his priest, his employer and his friends and neighbors?

16

17 II. **REAL ID was enacted and the case was transferred to the 9th**
18 **Circuit and they agreed that a denial of due process had been**
19 **found.**

20   REAL ID was enacted while this issue was still under
21 consideration before the District Court.

22   Real ID divested the District Court of habeas jurisdiction
23 and the matter was transferred to the 9th Circuit. (Exhibit F)

24   The 9th Circuit found that a denial of due process existed
25 and the matter was remanded with specific instruction to conduct a

thoroughgoing and meaningful evidentiary hearing on the Motion to Terminate. (Exhibit G)

Next, the parties agreed to a stipulated remand that held that the Petitioner was entitled to a hearing on the Motion to Terminate. (Exhibit H)

### III. **THE SAN FRANCISCO IMMIGRATION COURT HEARINGS**.

The Matter is now before the Immigration Judge in San Francisco and Counsel submitted a pleading entitled "Procedural History and Overview of the Issues and Renewed Motion to Terminate." (Exhibit I)

The Government responded with an Oppostion that, with all due respect, seriously misapprehends the legal distinction between *prima facie* eligibility and discretion. (Exhibit J)

Petitioner filed a Response to the Government Opposition. (Exhibit K)

On May, 1, 2008, the Immigration Judge responded with a one page ruling stating that, "There is no evidence of any communication by DHS that the Respondent is prima facie eligible for Naturalization." (Exhibit L)

The matter is set for Hearing on May 1, 2008 and if the Immigration Judge's order stands, the Petitioner is ineligible for any relief from Removal. (Exhibit M)

1

2 **POINTS AND AUTHORITIES IN TERMS OF CITIZENSHIP ELIGIBILITY**

3 **FOR AN ALIEN IN PROCEEDINGS.**

4

5     The procedure to terminate proceedings is explicitly

6 authorized by the regulations and allows an Immigration Judge to

7 terminate proceedings under 8 C.F.R. 239.2 (f) which specifically

8 allows the IJ to:

9

10                     "terminate removal proceedings to permit the
11                     respondent to proceed to a final hearing on a
                       pending application or petition for naturalization,
12                     when he/she has established prima facie eligibility
                       for naturalization and the matter involves
13                     exceptionally appealing or humanitarian factors."

14

15     Next, in terms of prima face eligibility, it is undisputed

16 that, in terms of 101 (a) (f) (8,) and the applicability of an

17 aggravated felony serving as a permanent bat to a bar to finding

18 good moral character, prior to IMMACT90, the only bar to a finding

19 of good moral character was a conviction for murder.

20     However, IMMACT90 specifically addressed the effective date

21 of aggravated felonies in terms of the bar to a finding of good

22 moral character under 101 (a)(f)(8) and held that this bar only

23 applies to convictions on or after the effective date - November

24 29, 1990.

25

1    The Ninth Circuit has definitely checked in and held that the

2    aggravated felonies added by IIRAIRA, in terms of good moral

3    character, still have an effective date of November 29, 1990.

4    Hernandez de Anderson v. Mukasey, 497 F.3d. 927 (9th Cir.

5    2007);Lopez-Castellanos v. Gonzalez 437 F.3D. 848, 851 (9th Cir.

6    2006)

7

8    As was explained above, there is a highly technical component

9    to the prima face finding when an alien is in proceedings – the

10   Government must affirmatively communicate to the Judge that the

11   Respondent is prima facie eligible or the alien needs to obtain a

12   Declaratory Judgment from a District Court. De Hernandez, supra at

13   933, quoting Matter of Cruz, 15 I& N Dec. 236 (BIA 1975).

14   Now, in the instant case, it is not a reasonable or

15   intellectually responsible argument to claim that he is **not** prima

16   facie eligible insofar as one is not statutorily precluded from

17   demonstrating good moral character in the context of Citizenship

18   if the conviction occurred before 1990 where, as here, the alien

19   was convicted in *1979* – eleven years before the cut-off.

20   However, it is argued that the Government **has** affirmatively

21   communicated prima facie eligibility for relief in the sense that

22   the US Attorney **stipulated** and agreed to have the case remanded

23   for an Evidentiary hearing on the Motion to Terminate.

24   In any event, if it is not found that the Government has

25   affirmatively agreed to prima facie eligibility, then we would

1  ask this Court to simply render a Declaratory Judgment stating

2  that the Petitioner is prima facie eligible for Naturalization.

3  **PRAYER FOR RELIEF**

4  Petitioner therefore respectfully asks this court to

5  render a Judgment stating,

6  1. By virtue of the stipulated Remand signed by

7  the US Attorney, the San Francisco Office of

8  the District Counsel is estopped from

9  asserting that they oppose the prima facie

10  finding of eligibility for Naturalization;

11  2. In the alternative, we would ask the Court to

12  render a Judgment stating that the Petitioner

13  is *prima facie* eligible for Citizenship based

14  on the date of the conviction in this case.

15  This ruling is silent as to the favorable

16  exercise of discretion; it merely declares

17  that the Petitioner is prima facie eligible to

18  apply for US Citizenship.

19

20  Dated: _4/25_ 2008

21

22

23  _____

24  Frank P. Sprouls

25

# EXHIBIT

# A

U.S. Department of Justice
Immigration and Naturalization Service

Notice to Appear

In removal proceedings under section 240 of the Immigration and Nationality Act

File No: A19 168 626

In the Matter of:

Respondent:    ALFARO ALFARO,    ISMAEL

2257 CULPEPPER STREET, NAPA, CA. 94558

707) 254 - 7129
(Number, street, city, state and ZIP code)                    (Area code and phone number)

☒  1. You are an arriving alien.
☐  2. You are an alien present in the United States who has not been admitted or paroled.
☐  3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

1. You are not a citizen or national of the United States of America.
2. you are a native and a citizen of Mexico.
3. You were granted Legal Permanent Resident Status in the United States of America on or about February 20, 1969.
4. You were convicted in violation of California Penal Code - 261 (2)/ 264.1 - Forcible rape - a felony, in the Superior Court of California, County of Napa on or about August 03, 1979.
5. You applied for admission at Oakland International Airport on or about December 15, 2003.
6. You were paroled for Deferred Inspection on or about December 15, 2003.
7. Your parole was revoked on or about January 12, 2004.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, as amended, in that you are an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime.

☐  This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐  Section 235(b)(1) order was vacated pursuant to:    ☐  8 CFR 208.30(f)(2)    ☐  8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:  To be scheduled

(Complete Address of Immigration Court, Including Room Number, if any)
on ____ To be set ____ at ____ To be set ____   to show why you should not be removed from the United States based on the
        (Date)              (Time)
charge(s) set forth above.

Bryan Yann, CBP Officer, SFR
(Signature and Title of Issuing Officer)

Date: ____ 01/12/2004

SAN FRANCISCO, CALIFORNIA
(City and State)

See reverse for important information

0027

Form I-862 (Rev. 4-1-97)

# EXHIBIT

# B

1 | GRUSSENDORF – COGHLAN, P.C.
  | 615 Sansome Street 2nd floor
2 | San Francisco, CA  94126

3

4 |              U.S. DEPARTMENT OF JUSTICE
  |      IMMIGRATION AND NATURALIZATION SERVICE
5 |      EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
  |                 ELOY, ARIZONA
6

7 |                              )
  |                              )
8 |   In the Matter of           )   A19 168 626
  |                              )
9 |   ALFARO-ALFARO, Ismael       )   MOTION TO TERMINATE
  |                              )   PROCEEDINGS
10 |     Respondent               )
  |                              )
11 |                              )
  |                              )
12

13 | _____

14

15 |                    INTRODUCTION

16 |        Respondent Ismael Alfaro, by and through counsel, respectfully requests that this Court

17 | TERMINATE PROCEEDINGS, because Respondent is eligible to become a United States

18 | citizen and has filed an application Form N-400 for naturalization (see attached).  Pursuant to 8

19 | CFR Section 239.2(f) an immigration judge may terminate removal proceedings to permit the

20 | alien to proceed  on a pending application for naturalization when the alien has established prima

21 | facie eligibility for naturalization. In the interests of judicial economy and in light of the strong

22 | equities in this case termination of proceedings is the most expedient remedy.

23 |           STATEMENT OF THE RELEVANT FACTS

24 |        Respondent  is a citizen of Mexico,  who became a lawful permanent resident of the U.S.

25 | in September 1969. He is the husband of a lawful permanent resident and the father of two U.S.

   | citizen children.

                                                              **0032**

                                     1

$\mathcal{C}$

1     In a Notice to Appear dated January 12, 2004, Respondent is charged with having been
2  convicted in 1979 of the offense of Forcible rape, in violation of California Penal Code Sections
3  262(2)/264.1. That offense arguably qualifies as an aggravated felony under Section
4  101(a)(43)(A) of the Immigration and Nationality Act. However, that conviction does not bar
5  him from being able to show the requisite good moral character in order to qualify for
6  naturalization. Anyone who has been convicted of an aggravated felony subsequent to the
7  enactment of the Immigration Act of 1990 (IMMACT 90) is permanently barred from being able
8  to show good moral character for naturalization purposes. However, an earlier conviction does
9  not have the same effect of a permanent bar. Under 8 CFR 316.10, an applicant shall be found to
10  lack good moral character for purposes of naturalization if s/he is "convicted of an aggravated
11  felony as defined in section 101(a)(43) of the Act on or after November 29, 1990."

12     Respondent apparently only has one other arrest subsequent to the 1979 conviction, for a
13  DUI-related offense approximately 11-12 years ago.

## CONCLUSION

     Based on the foregoing Respondent is clearly eligible for naturalization, and requests that
proceedings be terminated without prejudice so that he may proceed with his application to
become a United States citizen.

DATED:  February 27th, 2004

Respectfully submitted,

Paul Grussendorf

Counsel for Respondent

**0033**

2

# EXHIBIT C

1   Lapaglia?

2   MR. LAPAGLIA TO JUDGE

3      No, we'll let the Court do that.

4   JUDGE TO MR. LAPAGLIA

5      Well, the Court will direct Mexico. And the Court will --

6   let me make sure I've marked all the documents. Previously

7   marked in, in as -- previously marked and admitted as Exhibit 1,

8   which is Notice to Appear. The respondent was previously

9   represented by a law firm in San Francisco. That firm submitted

10   written pleadings of the respondent. The Court will mark those

11   pleadings as Exhibit 2. Actually that is not a written

12   pleadings, it's a request for a change of venue which the

13   Department responded to and the Court ultimately denied. The

14   next substantive exhibit is going to be the motion to terminate

15   proceedings which the Court will mark and admit as Exhibit 2.

16   The Court will mark and admit as Exhibit 3, the Department's

17   response to the motion to terminate. And at this time, based on

18   the evidence before it the admissions the concessions of the

19   respondent and the current state of the law having -- and the

20   Court will sustain the charge of removability under Section

21   212(a)(2)(A)(i)(I) and will order the respondent removable from

22   the United States to Mexico on the charge contained in the Notice

23   to Appear. Mr. Lapaglia, would you like to reserve appeal of the

24   Court's decision?

25   MR. LAPAGLIA TO JUDGE

**0121**

A 19 168 626          27          April 15, 2004

1        Yes, Your Honor.

2   JUDGE TO MR. LAPAGLIA

3        You going to be representing the respondent on appeal?

4   MR. LAPAGLIA TO JUDGE

5        No, Your Honor.

6   JUDGE TO MR. LAPAGLIA

7        Okay.

8   JUDGE TO MR. LAPAGLIA

9        Your Honor, I'd like to submit a motion to withdraw.

10  JUDGE TO MR. LAPAGLIA

11       All right.  Well, let me finish the oral decision and we'll

12  get to that.

13  JUDGE TO MR. ALFARO-ALFARO

14       Q.   Now, Mr. Alfaro, how old are you today?

15  MR. LANDIS TO JUDGE

16       Sir, before you go on I do also have the (indiscernible)

17  Department record.  I have a response to our opposition motion to

18  terminate.

19  MR. LANDIS TO JUDGE

20       Very well.

21  MR. LANDIS TO JUDGE

22       I don't, I don't know if the Court has --

23  JUDGE TO MR. LANDIS

24       I don't know, we'll double check.  Thank you, Mr. Landis.

25  JUDGE TO MR. ALFARO-ALFARO                      **0122**

A 19 168 626                28                April 15, 2004

# EXHIBIT

# D

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
Eloy, Arizona 85231

File No.: A 19 168 626                          April 15, 2004

In the Matter of          )
                          )
ISMAEL ALFARO-ALFARO       )    IN REMOVAL PROCEEDINGS
                          )
            Respondent     )

CHARGE:        Section 212(a)(2)(A)(i)(I) - conviction of a crime
               involving moral turpitude.

APPLICATIONS:  Motion to terminate.

ON BEHALF OF RESPONDENT:          ON BEHALF OF DHS

Mr. Richard Lapaglia              Mr. Brent H. Landis, Esquire
Law offices of Richard Lapaglia   Assistant Chief Counsel
515 North Main Street             1705 East Hanna Road
Eloy, AZ 85321                    Eloy, AZ

        ORAL DECISION AND ORDER OF THE IMMIGRATION JUDGE

    The respondent is a 54-year-old male, native and citizen of

Mexico.  The United States Department of Homeland Security has

brought these charges against the respondent pursuant to

authority contained in the Immigration and Nationality Act.

These proceedings were initiated with the filing of a Notice to

Appear with the Immigration Court on or about the 16th of

January, 2004.  See Exhibit 1 herein.

    In that document the Department of Homeland Security alleged

that the respondent is not a citizen or national of the United

States, that he is a native of Mexico and a citizen of Mexico.

That he was granted legal permanent resident status in the United

1

**0088**

States on or about the 20th of February, 1969. That he was convicted on or about the 3rd of August, 1979, in the Superior Court of California, Napa County for forcible rape in violation of California law. It further alleges the respondent applied for admission to the United States at Oakland International Airport on or about the 15th of December, 2003. It further alleged that he was paroled for deferred inspection on or about the 15th of December, 2003. And it finally alleged that his parole was revoked on or about the 12th of January, 2004.

Based on the factual allegations, the Department charged the respondent as removable under Section 212(a)(2)(A)(i)(I) of the Act, an alien who has been convicted of or who admits having committed a crime involving moral turpitude other than a purely political offense. The respondent admitted the factual allegations, conceded the charge of removability and the Court directed Mexico as the country of removal should removal become necessary, the respondent having expressed no fear of returning to Mexico should he be deported there.

The respondent, through counsel, moved to terminate these proceedings. That motion to terminate is found in this record as Exhibit 2. The request is for the Judge to terminate these removal proceedings to permit the respondent to proceed on a pending application for naturalization. The Department of Homeland Security responded to that motion to terminate. The Service's response is Exhibit 3. Again, there is a response from

the respondent's counsel.  Exhibit 4 is the response to the DHS's

opposition to the motion to terminate.  And the Court, having

considered all the evidence before it, is denying the motion to

terminate in order for the respondent to file an application for

naturalization.  Further, the Court, on the record before it, is

sustaining the charges based on the concessions and admissions of

the respondent and on the information contained as an attachment

to Exhibit 3.  It shows the respondent was on the 3rd of August,

1979, convicted of forcible rape in violation of California Penal

Code 261(2), as well as 264.1 which is forcible rape.  It shows

that he was convicted by a jury trial and that he was sentenced

to five years in prison.  There is a copy of the criminal

information attached to that document as well.

    The respondent is ineligible to apply for cancellation of

removal for certain lawful permanent aliens because he has been

convicted of an aggravated felony.  He is ineligible to apply for

an adjustment or readjustment of status because he has been

convicted of an aggravated felony.  He is ineligible for

cancellation of removal for certain non-lawful permanent

residents because he is a lawful permanent resident, that is ten-

year cancellation.  He is ineligible to apply for voluntary

departure because of the aggravated felony conviction.  In short,

the Court is not aware of any relief that this respondent may be

eligible.  The Court will note that this is a 1979 conviction and

that the respondent, had he pled to this offense, would be

eligible for relief under Section 212(c) pursuant to the United States Supreme Court decision in <u>St. Cyr v. INS</u>. However, the respondent was convicted by a jury trial and he is therefore ineligible for the requested relief under Section 212(c).

Further, the respondent makes a humanitarian argument as well. Counsel makes an argument that the Department of Homeland should be a stop from removing the respondent from the United States because of the age of this conviction and because of the fact the INS and its successor organization, the Department of Homeland Security, renewed the respondent's lawful permanent resident status. While that is an argument that has certain appeal, it is an argument that is beyond the scope of the jurisdiction of this Court, and one that needs to be pursued by the respondent in a Federal District Court.

The respondent being eligible for no forms of relief, the Court will order the respondent removed from the United States to Mexico on the charge contained in the Notice to Appear. The following order will be entered.

<u>ORDER</u>

IT IS HEREBY ORDERED that the respondent be removed from the United States to Mexico on the charge contained in the Notice to Appear.

_____
JOHN W. DAVIS
United States Immigration Judge

A 19 168 626                  4                  April 15, 2004

# EXHIBIT
# E

1  LAW OFFICE OF RICCI & SPROULS
   Attorneys at Law
2  445 Washington Street
   San Francisco, California 94111
3  (415) 391 2100
   FAX (415) 391 4678
4
5  FRANK P. SPROULS State Bar #166019
   Attorney for Petitioner
6
7              UNITED STATES DISTRICT COURT
8               FOR THE DISTRICT OF ARIZONA
9                    PHOENIX DIVISION
10                                    PETITION FOR A WRIT OF HABEAS
    Ismael Alfaro                     CORPUS
11  Petitioner,
                                      CV04-1115-PHX-KJM-CRP
12  v. JOHN ASHCROFT, ATTORNEY
    GENERAL OF THE UNITED STATES
13  AND
    District Director,
14  Phoenix District Office, U.S.
    BUREAU OF CITIZENSHIP AND
15  IMMIGRATION SERVICES
    Respondent.
16
17
18
19
20
21               **GENERAL ALLEGATIONS**
22      Petitioner is a native and citizen of Mexico who was
23  granted Lawful Residency in <u>1969</u>.
24      On or about 01/24/04 he was apprehended at entry following
25  a brief trip to his native Mexico and placed in Removal
    proceedings by the Respondent based on a conviction in 1979,

FILED ___ LODGED
RECEIVED ___ COPY

JUN 0 1 2004

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

1  following a jury trial, for a violation of CA Penal Code 261

2  (Rape). (Exhibit A – Notice to Appear, the INS charging

3  document).

4      He received the lower term of five years. (Exhibit B)

5      The NTA refers to him as an "arriving alien" and as such

6  the position of the Respondents is that he is ineligible for

7  Bond.

8      Their position is **not** based on INA 236 (c) of the Illegal

9  Immigration and Immigrant Responsibilty Act (IIRAIRA) which

10  holds that nearly all criminal aliens are denied bond.

11      That statute was given the constitutional imprimatur of the

12  Supreme Court in Kim v. De Moore, 38 US 123 (2003)

13      "But for" his apprehension at entry he would have been

14  eligible for Bond based on the fact that his  crime occurred

15  well before the date of the enactment of IIRAIRA in 1996 an he

16  did not come into custody directly from a Penal institution. He

17  thus falls under what is called the Transitional Period Custody

18  Rules. 303 (b) (2) of IIRAIRA.

19      Now the Transitional Rules, although expired, still apply

20  to an alien who would have been eligible during the term of

21  those Transitional Rules. Matter of West, Int. Dec. 3438 (BIA

22  2000); Matter of Adejini Int. Dec. 3417 (BIA 2001); Matter of

23  Rojas, Int. Dec. 3451 (BIA 2001).

24      The TPCR rules construe 303 (b) (2) of IIRAIRA and the

25  applicability of 236 (c) to aliens who are not directly remanded

---

PETITION FOR WRIT OF HABEAS CORPUS, Alfaro v. Ashcroft

2

1    into INS custody following a criminal sentence and, as in the

2    instant matter, parties who have lived law abiding lives for

3    many years then come into custody  through non-criminal law

4    means.

5        However, the Immigration Judge, acceding to the

6    Respondents, has him held in a No-Bond status.

7        Next, as relief from Removal the Petitioner filed a "Motion

8    to Terminate Removal Proceedings" so he could apply for

9    Naturalization. (Exhibit C - Motion and receipt of Citizenship

10   application).

11       The Government opposed the Motion. (Exhibit D)

12       This procedure is authorized by the regulations and allows

13   an  Immigration  Judge  to  terminate  proceedings  under  8  C.F.R.

14   239.2 (f) which specifically allows the IJ to:

15

16

17                   "terminate  removal  proceedings  to  permit  the
                     respondent  to  proceed  to  a  final  hearing  on  a
18                   pending application or petition for naturalization,
                     when he/she has established    prima        facie
19                   eligibility  for  naturalization  and  the  matter
                     involves  exceptionally  appealing  or  humanitarian
20                   factors."

21       There  is  nothing  in  the  regulations  which  prevents  a

22   Respondent  from  filing  an  N-400  *subsequent*  to  the  initiation  of

23   Removal proceedings.

24       This is clear when the regulatory scheme is read as a whole.

25

1    Indeed, the entire scheme is set up to allow an alien to

2    overcome the bars to applying for citizenship when removal

3    proceedings are extant and the matter presents exceptionally

4    appealing or humanitarian factors.

5    Obviously, the reason 8 C.F. R. 292 et seq. requires

6    proceedings to be terminated in cases of compelling equitable

7    interest is because of the bar to applying for Citizenship while

8    an alien is in proceedings found at INA section 318;8 USC 1429

9

10    If the IJ terminates proceedings specifically to apply for

11    Citizenship, the bar does not apply and the Service must address

12    the merits of the Naturalization application.

13    To further demonstrate that this proposed motion is

14    authorized by the Act and the regulations, section 318, makes

15    special reference to such procedure.-

16    "Provided, that the findings of the Attorney General in
      terminating removal proceedings, or canceling the

17    removal of an alien... shall not be in any way binding
      upon the Attorney General with respect to the question

18    of whether such person has established his eligibility
      for naturalization as required by this title." INA 318.

19

20    It is apparent that the regulations allow an alien to file an

21    application for Naturalization before the Service while in

22    proceedings. This makes the petition "pending". The IJ then may

23    exercise her discretion in terminating proceedings to remove the

24    bar found at INA 318; 8 USC 1429

25

PETITION FOR WRIT OF HABEAS CORPUS, Alfaro v. Ashcroft                    4

1   Based on the above, the IJ can terminate proceedings if the

2   Court is satisfied that prima facie eligibility exists and the

3   case presents exceptional and compelling matters.

4   Next, there is no question as to prima face eligibility based

5   on the distant nature of the conviction.

6   Section 316{8 USC 1427} of the 1996 Act governs the standards

7   required to demonstrate Good Moral Character in terms of

8   eligibility for Naturalization.

9
10  In order to be eligible for Naturalization, an applicant must

11  be a person of good moral character for the five years preceding

12  the date the alien files the application for Naturalization.

13  This is a statutory predicate to eligibility and it is

14  acknowledged that the Service can look beyond the one year period

15  in making the ultimate determination on good moral character. INA

16  316 (e)

17  However, prior misconduct is only relevant if the Service has

18  some indicia that the applicant is not presently a person of good

19  moral character. Santamaria- Ames v. INS, 194 F.3d. 1127 (9th Cir.

20  1996).

21  Section 316 must be read in conjunction with 101 (f) (8) {8

22  USC 1101 (f) (8)} regarding good moral character.

23
24          "no person shall be regarded as, or found to be, a
25          person of good moral character who, during the period
            for which good moral character is required to be

1    established is, or was...one who at any time, has been
2    convicted of an aggravated felony as defined in
     subsection 101 (a) (43).

3

4    In terms of 101 (a) (f) (8,) and the applicability of

5    criminal convictions as a bar to finding good moral character,

6    prior to IMMACT90, the only bar to a finding of good moral

7    character was a conviction for murder.

8    After IMMACT 90, the bar to a finding of good moral character

9    added the laundry list of convictions found at 101 (a) (43) which

10   IMMACT90 added to that section – drug trafficking, crimes or

11   violence with a five year sentence and so on.

12

13   However, IMMACT90 specifically addressed the effective date

14   of aggravated felonies in terms of the bar to a finding of good

15   moral character under 101 (a)(f)(8) and held that this bar only

16   applies to convictions on or after the effective date – November

17   29, 1990.

18   It is thus clear that Congress recognizes the significance of

19   the temporal application of 101 (a)(f)(8) and if it wishes to

20   alter that temporal application it must specifically and

21   explicitly do so.

22   It is clear that none of the subsequent legislation, from

23   AEDPA to IIRAIRA has made any explicit, textual change to

24   IMMACT90's effective date for 101 (a)(f)(8) and one is precluded

25   from a finding of good moral character for murder at any time and

1   any aggravated felony for a conviction entered on or after

2   November 29, 1990.

3       There is no question that the Government agreed that the

4   Petitioner was prima face eligible insofar as their opposition was

5   based on his failure to demonstrate exceptional equities. (Exhibit

6   D — Government opposition).

7       The petitioner responded to the Government opposition by

8   presenting voluminous evidence regarding the equities that the

9   petitioner has developed in the twenty five years that have

10  elapsed since the conviction —

11      -25 years of law abidance;

12      -Lawful Resident mother and Lawful Resident spouse;

13      -Two United States citizen children described as exemplary

14  students, with the 17 year old poised to attend college;

15      -Same employer since 1993;

16      - A deep and abiding faith as evidenced by a letter from

17  his pastor;

18      -Strong support of the community as evidenced by multiple

19  letter of support all of whom writ of his probity, work ethic

20  and devotion to his family. (Exhibit E)

21      The matter was set for Master Hearing and the Petitioner's

22  counsel Steve Coughlin, who resides in San Francisco, instructed

23  local counsel to appear for him and to simply set a date for a

24  hearing where the Motion to terminate would be meaningfully

25  addressed.

PETITION FOR WRIT OF HABEAS CORPUS, Alfaro v. Ashcroft                    7

1   In addition to his own testimony, Petitioner contemplated
2   that his Lawful permanent Resident wife would testify as well as
3   his United States citizen children.

4   Instead, counsel was told simply that the Motion was denied
5   - No hearing, no explanation and no meaningful appeal record.
6   (Exhibit F - declaration of counsel)

7   The IJ then determined that he was not eligible for relief
8   and on April 15, 2004 Petitioner was ordered removed from the
9   United States and present counsel filed an appeal to the Board
10  of Immigration Appeals. (Exhibit G)

11  It is one of the anomalies of Immigration law that one can
12  be eligible for citizenship on the one hand and ineligible for
13  any relief on the other.

14  Here, it is conceded that the Respondent has been convicted
15  of an aggravated felony as defined under the Act INA 101 (a)
16  (43).

17  The only avenue for relief for a long time Resident is
18  found at INA 240A (a) which requires seven years residency,
19  however, the alien must "not have been convicted of an
20  aggravated felony."

21  Next, while it is true that he committed the offense
22  **twenty-one years** before the effective date of IIRAIRA, the law
23  is retroactive as it applies to this Petitioner.

24  This is so because while it is true that the Supreme Court
25  ahs held that IIRAIRA cannot be apply retroactively to an alien

1  who **pleads** guilty prior to the effective date of the Act, that

2  holding obviously does not apply to an alien who proceeded to a

3  jury trial. INS v. St Cyr, 533 U.S. 289.

4      It is thus clear the alien's only avenue for relief was the

5  Motion to Terminate proceedings and he was denied due process in

6  the Immigration Judge's refusal to even *conduct* a hearing or

7  explain or justify his summary denial.

8  <center>**JURISDICTION**</center>

9      It is conceded that the Illegal Immigration Reform and

10  Immigrant Responsibility Act (IIRAIRA) deprives petitioners who

11  have been convicted of aggravated felonies of federal appellate

12  review, however, this Court has jurisdiction pursuant to 28

13  U.S.C. 2241 to consider a writ of habeas corpus by an alien

14  Petitioner who mounts a colorable constitutional challenge to

15  the immigration laws and procedures of the United States.

16  Flores-Miramontes v. INS, 212 F.2d. 1133, 1136 (9th Cir. 2000).

17      This Court has subject matter jurisdiction to consider this

18  petition pursuant to 28 USC 2241. Magana-Pizano v. INS, 200

19  F.3D. 603(9th Cir 1999).

20      Magana Pazanao interpreted 28 USC 2241 in the context of the

21  "court stripping" provisions of IRRAIRA.

22      Magana-Pizano found that this language divested the Federal

23  appellate court from entertaining a constitutional challenge,

24  such as this one, on direct appellate review.

25

1    However, the court found that IIRAIRA did not explicitly

2   remove habeas jurisdiction from the district court and thus the

3   district court retains jurisdiction under the all-writs section.

4    Furthermore, nearly every court that has addressed the

5   issue has conceded that where a statute does not explicitly

6   preclude constitutional review, it must be presumed that the

7   district court retains jurisdiction to entertain a

8   constitutional challenge under the all writ section. Magana-

9   Pizano, supra; Danh v. de Moore, 59 F. Supp.2d 994, 998 (N.D.

10  Cal. 1999). Vargas v. Reno, 966 F. Supp, 1537, 1541-1542 (S.D.

11  Cal. 1997) Gonzalez v. Reno 144 F.3d. 110, 123 (1st Cir. 1998)

12  Henderson V. Reno, 157 F.3d 106, 122 106, 122 (2nd Cir. 1988);

13  Sandoval V. Reno, 166 F.3d 225, 238 (3rd Cir. 1999) La Guere v.

14  Reno, 164 F.3d 1035 (7th Cir. 1998); Turkhan v. INS, 123 F.3d 487

15  (7th Cir. 1997);Mansour v. INS 123 F.2d. 423 (6th Cir.

16  1997);Auguste v. Attorney General,  118 F.3d. 723 (11th Cir.

17  1997) [LaGuerre v.Reno, 164 F.3d. 1035 (7th Cir. 1998) is the

18  sole appellate court to hold that habeas jurisdiction is

19  repealed by IIRAIRA].

20   Finally, there is no need to exhaust administrative

21  remedies where the administrative remedies would be futile.

22   Here, as will be explained below, the claims presented in

23  the instant writ are based on the Due Process and Equal

24  Protection clauses of the constitution and it is undisputed that

25  the BIA has no jurisdiction to entertain constitutional

---

PETITION FOR WRIT OF HABEAS CORPUS, Alfaro v. Ashcroft

1  questions of law. Matter of UM, 20 I&N Dec. 327 (Board of
2  Immigration Appeals 1991)

3                    **PERSONAL JURISDICTION**

4      A court has personal jurisdiction in a habeas case so long
5  as the custodian can be reached by process. Braden v 30th
6  Judicial Circuit Court of Kentucky, 410 U.S. 484, 499
7  Petitioner was convicted within the jurisdiction of this court.

8      All relevant hearings were held in Elroy, Arizona and the
9  Immigration Judge in Elroy, Arizona ordered the Petitioner
10  deported and he is being held in custody in Elroy, AZ.

11

12              **POINTS AND AUTHORITIES AND ARGUMENT**

13

14  **I. PETITIONER WAS DENIED DUE PROCESS OF LAW BY THE IJ.**
15  **a. Legal standard for the denial of due process**

16      It has been unambiguously held that aliens in deportation
17  proceedings are entitled to both substantive and procedural due
18  process right under our constitution. Reno V. Flores, 507 U.S.
19  292, 306, (1993). "It is well established that the Fifth
20  Amendment entitles aliens to due process of law in deportation
21  hearings."

22      This road has been traveled before and it has been held
23  that even aliens unlawfully present in the United States are
24  entitled to the protections of the Fifth Amendment. Doherty v
25  Thornbough, 943 F.3d. 204, 209 (2d. Cir. 1991).

1      It would stand constitutional and immigration law
2   principles on their head if illegal aliens were entitled to such
3   protection but Lawful Permanent Residents of many years, with
4   deep and enduring ties to this country, were not.

5      It has also been held that the due process is offended
6   where the Immigration Service, ignores its own precedent and
7   ignores specific statutory grounds. Brownell v. We Shung 352
8   U.S. 180 (1956); Kwong Hai Chew v. Colding, 344 U.S. 590, 596
9   (1953).

10     Next, in the specific context of a Deportation/Removal
11  hearing, due process demands that an alien facing deportation is
12  entitled to a full and fair hearing of his claims and a
13  reasonable opportunity to present evidence on his behalf.
14  Sanchez v. INS, 164 F.3d. 448, 450 (9th Cir. 1990); Colemenar v.
15  INS 210 F. 3d. 967, 975 (9th Cir. 200)

16     In the particular case, it seems piercingly obvious that
17  the Petitioner was denied due process in the sense that he
18  received *no hearing at all* and he had **no opportunity** to present
19  evidence on his behalf.

20     Next, it is abundantly clear that the Petitioner has a
21  right to administrative review to the Board of Immigration
22  Appeals.

23     However, the Petitioner here has been denied the right to
24  meaningful appellate review because both counsel and the BIA are
25. left to speculate as to **why** the Motion was denied.

---

1    Was it because, the IJ felt that the crime was so heinous
2    that the intervening 25 years of law abidance did not purge the
3    taint?

4    Was it because Petitioner had not presented sufficient
5    hardship to his Lawful Resident wife and United States citizen
6    children?

7    Was it because he did not credit the letters of support
8    from his priest, his employer and his friends and neighbors?

9    In the instant case the alien was denied a hearing and a
10   meaningful appeal and there has been a clear and demonstrable
11   denial of due process and this Court should order the IJ to
12   conduct a full and fair evidentiary hearing to allow the
13   petitioner to testify as the facts and circumstances behind the
14   conviction in **1979**, to allow him and his witnesses to testify as
15   to his subsequent law abidance and the hardship they would
16   suffer if he were to be removed from the United States.

17

18   II. **THE PETITIONER IS ENTITLED TO A REASONABLE BOND**.

19       1) INA 235 (b)- an alien who is an applicant for admission…
            shall be detained for a removal proceeding if an
20          immigration officer determines that such alien is clearly
            and beyond doubt not entitled to be admitted….
21

22   "An Immigration Judge may not redetermine conditions of custody
23   and bond determinations imposed by the Service for the following
24   class of aliens…. (B) – arriving aliens in Removal proceedings.
25   8 C.F.R, 3.19 (h) (2) (i) (B).

1    As we pointed out above, but for the above authority, the

2  Petitioner would be eligible for Bond under the Transitional

3  Period Custody Rules. Matter of West, Int. Dec. 3438 (BIA 2000);

4  Matter of Adejini Int. Dec. 3417 (BIA 2001); Matter of Rojas,

5  Int. Dec. 3451 (BIA 2001).

6    Petitioner claims that the distinction between an "arriving

7  alien" Lawful Resident and an Resident Alien present in the

8  United States is outmoded and chimerical, is no longer relevant

9  in terms of the amendments to Immigration law by virtue of the

10  passage of the Illegal Immigration Reform and Immigrant

11  Responsibility Act (IIRAIRA) and it is also a violation of the

12  Equal Protection Clause of the United States constitution, in

13  terms of Residents, as being utterly irrational.

14  a. **THIS LAWFUL PERMANENT RESIDENT PETITIONER HAS A SUBSTANTIVE**

15  **DUE PROCESS RIGHT TO BE FREE FROM ARBITRARY DETENTON.**

16  a. **Lawful Resident Arriving Aliens enjoy the protections of the**

17  **Due Process clause of the Constitution based on IIRAIRA and the**

18  **institution of the unitary procedure known as "Removal"**

19  **proceedings.**

20    Now, section INA 236 governs custody determinations and the

21  Supreme Court has held that this statute passes constitutional

22  muter. Kim v. DeMoore, supra

23    However, as was pointed out above, the Petitioner does not

24  fall under its purview.

25

---

PETITION FOR WRIT OF HABEAS CORPUS, Alfaro v. Ashcroft                    14

1    Now, prior to Kim the majority of appellate courts had

2  struck down the constitutionality of INA 236 and held that

3  Lawful Residents were entitled to a Bond hearing.

4    Thus, when the District Courts addressed the issue, prior

5  to Kim, when the law held that Resident aliens present in the

6  United States were constitutionally entitled to Bond Hearing,

7  they found that an arriving alien Resident *does* have an assert

8  able liberty interest and an individualized bond determination

9  should be conducted. Alaka v. Elwood, 225 F. Supp. 547 (United

10  States District Court of Pennsylvania, E.D. October 8,

11  2002);Richardson v. Reno, 994 F. Supp. 1466  United States

12  District Court S.D., Florida, 1998)

13    Now, to be sure, there has always been a distinction

14  between arriving aliens who have **never set foot upon** our shores

15  and an alien present in the United States.

16    "It is true those aliens who have passed through our gates,
   even illegally, may be expelled only after proceedings

17  conforming to due process of law … but **an alien on the threshold
   on initial entry** stands on a different footing, whatever the

18  procedure authorized by Congress it is the due process as far as
   the alien denied entry is concerned. U.S. ex rel Knaff v.

19  Shaughnessy, 338 U.S. 537 (1950)

20

21    The Ninth Circuit upheld this distinction for "arriving'

22  Mariel Cubans in Barrera-Echavarria v. Rison, 44 F.3d. 1441 (9th

23  Cir. 1995).

24    Now, that case fell under prior law where the alien was in

25  Exclusion Proceedings under (former) 8 USC 1226.

---

1    In any event, the Court found that the Non-Resident alien

2    who **had never been legally admitted** to the United States could

3    not assert a liberty interest and the Ninth Circuit overturned

4    the District Court's grant of a writ of habeas corpus. <u>Barrerra</u>,

5    supa.

6    As will be discussed below, all of the above cases fell

7    under prior law where Immigration procedures had two sets of

8    proceedings for aliens facing expulsion — Exclusion proceedings

9    for aliens apprehended at the border under 8 UCS 1226 and aliens

10    apprehended within the United States and Deportation proceedings

11    under 8 UCS 1252b.

12    It will be argued below that the analysis must proceed

13    under this new statutory framework, however, to the extent that

14    the above law has relevance, it is totally inapplicable to the

15    Petitioner because they all address an assertion of a liberty

16    interest by an alien making an **initial** entry to the United

17    States and this must be contrasted with a Lawful Permanent

18    Resident of twenty years apprehended at entry after a brief trip

19    and who is returning to his county of actual residence.

20    b. **IIRAIRA and the abolition of Exclusion proceedings**

21    **alter the legal landscape.**

22    Among the many changes wrought by IIRAIRA, one of the most

23    significant was the abolition of "Exclusion" proceedings and the

24    institution of one unitary form of Proceedings — "Removal" under

25    INA 240.

1    Under prior law, *all* aliens who sought to enter the United
2  States were placed in Exclusion proceedings – if there was an
3  issue as to the legal propriety of their "entry". INA 236 {8 USC
4  1226}

5    This included aliens entering the United States for the
6  very first time as well as Lawful Residents of many years.

7    Under IIRAIRA proceedings are now brought in one unitary
8  form – "Removal" under INA 240.

9    Now, the new Act retains some of the distinctions found
10  under the old law in terms of Exclusion and Deportation in terms
11  of *certain* arriving aliens receiving very limited constitutional
12  and procedural protection.

13    For instance, non-Resident aliens who have never resided in
14  the United States or who have resided in the United Sates for
15  less than two years, or who have fraudulent documentation are
16  subject to "expedited removal" by an INS Officer. INA 235 {8 USC
17  1225 (b) (1) et seq.}

18    Under this procedure, the alien has no right to see an
19  Immigration Judge, no right to Bond and the Removal of the alien
20  is not subject to administrative appellate review or judicial
21  review. {8 USC 1225 (b) (1) (C)}

22    On the other hand, where an alien, like Petitioner, is not
23  subject to expedited removal, he or she is then placed in
24  "Removal" proceedings. {8 USC 1225 (b) (2) (A)}

25

1  Thus, Lawful Permanent Residents aliens apprehended at the

2  border, who formerly would have been placed into Exclusion

3  proceedings are now placed in Removal proceedings with all other

4  aliens.

5  Now, unless this an Orwellian attempt to soften the

6  harshness of the words "Deportation" and Exclusion" it must have

7  legal significance.

8  Under prior law, an alien in Exclusion proceedings was

9  specifically denied the opportunity seek Bond before the

10  Immigration Judge, however he or she could request "parole" — a

11  concept that would allow the alien to remain at liberty while

12  the case was being adjudicated. (former INA 212 (d) (5) (A).

13  An alien denied Bond or parole was entitled to seek

14  judicial review of the denial of parole. Jean v. Nelson, 472

15  U.S. 846 (1985).

16  The entire statutory scheme for "Exclusion" was separate

17  and distinct from "Deportation".

18  Presently, all aliens are placed in Removal proceedings,

19  with the exception not relevant here, of aliens subject to

20  expedited removal.

21  It is the **central** position of the Petitioner that once the

22  officer makes the determination that the alien is not subject to

23  expedited removal because as here, the applicant is a Resident,

24  and places the alien into Removal proceedings, that alien has

25

the *same* liberty interest and the *same* constitutional

protections as all other all aliens in <u>Removal</u> proceedings.

Indeed the custody statute, INA 236, **presumes** that arriving

aliens will be subject to the same custody restrictions as

aliens already present.

> 8 USC 1226 (c)
> DETENTION OF CRIMINAL ALIENS
> (1)     The Attorney General shall take into custody any
>         alien who
> (A)    *is inadmissible by reason of having committed any*
>        *offense covered in section 212 (a) (2),*
> (B)    is deportable by reason of having committed any
>        offense covered in section 237 (a) (2) (A) (ii),
>        (A)…

Here, the very statute that covers the detention of aliens

clearly contemplates the detention of INADMISSIBLE Aliens.

On is only inadmissible by virtue of attempting to enter

the country – just like the Respondent.

It is our position then, that **all** aliens in Removal

proceedings have coterminous rights and procedures.

If the position of the Government is adopted then Removal

proceedings are simply a semantic nicety and the old distinction

between Exclusion and Deportation remains in place.

This is an irrational interpretation; Congress clearly

included this dramatic procedural change for a specific reason.

In statutory interpretation it is the duty of a court to

give effect to every word and clause of a statute rather than to

emasculate an entire section. <u>U.S. v. Menasche</u>, 348 U.S. 528,

539, <u>Bresgal v. Brock</u>, 843 F.2d 1193, 1166 (9th Cir.1987).

Another principle of statutory construction is to presume that a statutory scheme is harmonious and that the drafters, in including and excluding language, had a definite and demonstrable purpose in mind.

An instructive case to view these changes is Lin v. INS, 298 F.3d. 832 (9th Cir. 2002) which construed a different statute – 8 USC 1231 (a) (6) – but the analysis turned on the supposed vital distinction between "arriving" aliens and aliens present in the United States.

8 USC 1231 et esq., deals with the custodial status of aliens already removed and deported from the United States but who are still in custody.

In Lin the INS argued, just as they will here, that an "arriving" alien in Removal proceedings should be treated precisely the same as an alien in former Exclusion proceedings.

> "In its brief the Government argues that the central operating terms of the two statutes are functionally the same – namely that Government suggests that "entry" and "admission" are interchangeable with "excludable" and "inadmissible." This suggestion however, fails to acknowledge the extent to which IIRAIRA has altered the statutory landscape of immigration law.'
>
> The INA is no longer denominated in terms of "entry" and "exclusion." Section 1001 (a) (13) which formerly defined "entry" as any coming of a an alien into the United States from a foreign port or place...8 USC now defines "admission" to mean the lawful entry of an alien into the United states after inspection and authorization by an immigration officer...Concomitantly, IIRAIRA dropped the concept of "excludability" and now uses the defined term of inadmissibility.....there are substantial differences between the two statutes. Under the pre-IIRARA INA, excludable aliens were entitled to less procedural protections than "deportable" aliens but once an alien effected entry into the

1    United States, whether lawful or unlawful, that individual
2    would receive the procedural protections of a deportation
     hearing as opposed to an exclusion hearing. <u>Landon v.</u>
3    <u>Placencia</u> 459 U.S. 21 (1994)… We simply cannot ignore that
     excludable is no longer a term that has any statutory import
4    under the INA. <u>Lin v. INS</u> at  856.

5

6    In that case the Ninth ultimately held that <u>Lin</u>, an arriving

alien, who had never attained Residency, was entitled to a post-
7    removal custody review.

8    The position of the Petitioner is considerably stronger. He
9    is a Lawful Resident of the United States since 1969 and, prior to
10   the IJ denial, he was an applicant for Citizenship.

11   As the Pennsylvania District court in <u>Alaka</u> stated in
12   comparing a Lawful Resident present in the United States and in
13   Removal proceedings and an "arriving alien" Lawful Resident in
14   Removal proceedings –

15       "Both are entitled to a bond hearing regardless of how they
         came to be placed in regular removal proceedings. There is no
16       rationale for an alien in regular removal proceedings to be
         entitled to bond when the ground for removal is deportability
17       but denied Bond when the ground of Removal is
         inadmissibility. As previously explained, once an alien is in
18       Removal proceedings the distinction between deportation and
         exclusion is no longer cognizable under the Act…… The
19       detention of Lawful Permanent Resident arriving aliens after
20       they have been found subject to removal but who have not yet
         been ordered removed because they are pursuing their
21       administrative remedies violates their due process rights
         unless they have been afforded the opportunity for an
22       individualized hearing at which they can show they do not
         pose a flight risk or a danger to the community, <u>Alaka</u> at
23       570-571 .

24   Here, if the alien had been apprehended within the borders of
25   the United States, he would have been eligible for an

individualized Bond hearing. We argue that the Petitioner is similarly entitled.

Based on the foregoing, the Petitioner is entitled to an individualized Bond hearing with all deliberate speed.

## III. ASSUMING *ARGUMENDO*, THE INS DISTINCTION IS CORRECT, IT VIOLATES THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION

There is little doubt that when the Immigration Service distinguishes between groups of aliens, the minimal scrutiny test is employed.

Under this test, the distinction must be only rationally related to a legitimate government interest. Clebourne v. Cleveland Living Center Inc. 473, U.S. 432, 440 (1985)

Therefore, federal classifications between groups of aliens are presumptively valid unless wholly irrational. Nyquist v. Mauclet, 432 U.S. 1, 7 (1977); Sudomir v. McMahon, 767 F.2d. 156, 1464 (9th Cir. 1985); U.S. v. Baratas-Guillen 632 F.2d. 749 (9th Cir. 1980).

There is no equal protection violation where the distinction between the classes is not arbitrary or unreasonable. Komarenko v. INS, 35 F.3d 432, 435 (9th Cir. 1994).

1    Consequently it is exceedingly rare that this court or other

2    federal courts have upheld an equal protection challenge under

3    this analysis.

4    However, "deference is not abdication" and the federal courts

5    have not hesitated to find an equal protection violation where the

6    distinction is completely arbitrary and irrational and serves no

7    legitimate governmental purpose.

8    The most recent example of an equal protection violation was

9    in Garberding v. INS, 30 F.3d 1187(9th Cir.1994)

10   There, the prevailing policy of the INS and the BIA was that

11   an expungement of a first time simple possession controlled

12   substance conviction would be honored and thus not be able to

13   support a charge of deportability, only if the states's statutory

14   scheme was an exact counterpoint to the Federal First Offender

15   Statute.

16   This distinction did not pass constitutional muster.

17   "Gaberding had the bad luck or poor judgment to possess her
     marijuana in Montana. The state legislature of Montana has seen
     fit to extend the privilege of expungement to persons who are
     convicted of drug offenses more serious than Gaberdings simple
     first possession. It is this fortuitous circumstance, not
     Gaberdings conduct, which the INS used to distinguish her
     deportation." at 1191.

18   Petitioner contends that the present statutory scheme is

19   equally irrational and there is ample precedent for the

20   inescapable conclusion that this distinction is flatly

21   unconstitutional.

1    Here, the INS is bound by the transitional Period Custody
2  Rules, but they cling, with almost feral tenacity, to the argument
3  that they do not apply to Arriving aliens. 8 C.F.R, 3.19 (h) (2)
4  (i) (B).

5    Here, for purposes of Equal Protection, the two classes
6  being distinguished are **Residents** present in the United States
7  who were apprehended in the United States and are eligible for
8  Bond under the Transitional Period Custody Rules and in Removal
9  Proceedings and **Residents** apprehended at entry and in Removal
10  proceedings and otherwise eligible for Bond under the
11  Transitional Period Custody Rules.

12    The former are entitled to an individualized bond hearing
13  and the latter are not.

14    This is so despite the fact that the former may have
15  committed egregious, violent and fairly recent crimes while the
16  latter, like here, has a distant conviction.

17    Simply put, this cannot pass the minimal scrutiny test.

18    It is argued that this distinction is particularly
19  irrational, in this case, where the detained alien is clearly
20  not a flight risk and is clearly not a danger to the community
21  given that he has lived a law abiding life since *1979*.

22    The Equal Protection analysis, as applied to this
23  Petitioner demonstrates an utterly irrational distinction and
24  this Court should set a bond hearing on this ground alone.

25

1

2

3                          ***PRAYER FOR RELIEF***

4

5        It is respectfully requested that this court make a finding

6   that Petitioner was denied Due Process of law and the Equal

7   Protection of the law and remand this case for an Individualized

8   Bond hearing as well as to schedule a full-blown evidentiary

9   hearing where Petitioner will have the opportunity to present

10  evidence and testimony in support of his Motion to Terminate

11  proceedings in order to proceed on his application for United

12  States Citizenship.

13  Dated: _____ 2004

14  _____

15

16  Frank P. Sprouls

17

18

19

20

21

22

23

24

25

PETITION FOR WRIT OF HABEAS CORPUS, <u>Alfaro v. Ashcroft</u>                    25

```
 1    LAW OFICE OF RICCI&SPROULS
      Attorneys at Law
 2    445 Washington Street
      San Francisco, CA, 94111
 3    (415) 391 2100
      FRANK P. SPROULS
 4    Attorney for Defendant

 5

 6

 7                          VERIFICATION

 8     I, Frank P. Sprouls, hereby declare as follows:

 9         I am an attorney admitted to practice law before the courts

10    of the State of California, the Northern District of the United

11    States District Court, the Southern District of the United States

12    District  Court,  the  Ninth  Circuit  Court  of  Appeals  and  the

13    Eleventh Circuit Court of Appeals. I am also currently seeking pro

14    hac vice admission to this Court.

15         I have my office in San Francisco, Ca, 445 Washington Street.

16         I am the attorney representing petitioner, who is

17    challenging  the  validity  of  his  custodial  status  through  a

18    petition for a writ of habeas corpus.

19         I am authorized to file this petition.

20         I  have  read  the  foregoing  petition  for  a  writ  of  habeas

21    corpus  and  know  the  contents  thereof  to  be  true  based  upon

22    information and belief.

23    I declare under the penalty of perjury that the foregoing is true

24    and correct.

25    Executed on  5  9 5 2004 at San Francisco, California

26
      _____
27    Frank P. Sprouls

28
```

# EXHIBIT
# F

JKM

1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                     FOR THE DISTRICT OF ARIZONA

9

10   Ismael Alfaro,                              )   No. CV 04-1115-PHX-FJM

11                    Petitioner,                )   **TRANSFER ORDER**

12   vs.                                         )

13                                               )

14   Alberto R. Gonzales, et al.,                )

15                    Respondents.               )

16

17          Pending before the Court are Petitioner's Motions to Reconsider Dismissal of Due

18   Process Claim (Docs. #18 & #22), Motion for Hearing (Doc. #25) and Motions to Transfer

19   (Docs. #28 & #29). Petitioner's Motions to Reconsider and Motions to Transfer will be

20   granted and this action will be transferred to the United States Court of Appeals for the Ninth

21   Circuit pursuant to the REAL ID Act of 2005.

22                              **BACKGROUND**

23          On June 1, 2004, Petitioner, who is represented by counsel, filed a Petition for Writ

24   of Habeas Corpus (Doc. #1). Petitioner presented two claims for relief: (1) that the

25   immigration judge denied his due process rights by failing to "meaningfully address" his

26   motion to terminate the removal proceedings in order to allow him to proceed on his

27   application for naturalization; and (2) that the immigration judge improperly found him

28   ineligible for release on bond as an arriving alien. On July 16, 2004, the Court dismissed

1    Petitioner's due process claim without prejudice for failure to exhaust administrative
2    remedies. (Doc. #6 at 3). The Court directed Respondents to answer Petitioner's second
3    claim and the matter was referred to Magistrate Judge Charles R. Pyle for a report and
4    recommendation. On August 18, 2004, Respondents filed a Response in Opposition to
5    Petition for Writ of Habeas Corpus (Doc. #9) addressing only Petitioner's bond claim as
6    directed. On August 26, 2004, Petitioner filed a Response to Government Opposition to
7    Petition for Writ of Habeas Corpus (Doc. #11) also addressing only the bond claim. On
8    December 21, 2004, the magistrate judge issued a Report and Recommendation (Doc. #20)
9    on Petitioner's bond claim.

10    On January 6, 2005, the Court granted a Stay of Removal (Doc. #24) prohibiting
11    Respondents from removing Petitioner from the United States until his Petition for Writ of
12    Habeas Corpus is resolved. On February 20, 2005, the Court entered an Order (Doc. #26)
13    adopting the magistrate judge's Report and Recommendation and denied the Petition for Writ
14    of Habeas Corpus on Petitioner's bond claim only. The Court, however, withheld entering
15    judgment on the action pending resolution of Petitioner's motions for reconsideration of the
16    July 16, 2004 Order dismissing his due process claim.

17                            **MOTIONS TO RECONSIDER**

18    In his Motion to Reconsider Dismissal of Due Process Component of Claim (Doc.
19    #18) and his Renewed Motion to Reconsider Dismissal of Due Process Claim (Doc. #22),
20    Petitioner argues that his due process claim should be reinstated since he exhausted his
21    administrative remedies subsequent to the filing of this action. Although the Court directed
22    Respondents to file a response to Petitioner's Motion to Reconsider (see Doc. #23 at 3), they
23    have not responded. Petitioner avers that his administrative remedies were exhausted on
24    September 3, 2004, when the Board of Immigration Appeals dismissed his appeal. It
25    therefore appears that Petitioner's administrative remedies have been exhausted. It also
26    appears that Respondents have no objection to the reinstatement of Petitioner's due process
27    claims. Accordingly, Petitioner's motions for reconsideration will be granted and his due
28    process claim will be reinstated.

1    **MOTIONS TO TRANSFER**

2    Petitioner has filed a Motion to Transfer (Doc. #28) and a Renewed Motion to

3  Transfer (Doc. #29). Petitioner argues that the Court's jurisdiction over this matter has been

4  eliminated by the enactment of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231

5  (May 11, 2005). Petitioner requests that this action be transferred to the United States Court

6  of Appeals for the Ninth Circuit pursuant to REAL ID Act § 106(c). Respondents have not

7  responded to the motions to transfer.

8    As amended by the REAL ID Act, 8 U.S.C. § 1252(a)(5) now provides in relevant

9  part:

10    (5) EXCLUSIVE MEANS OF REVIEW. – Notwithstanding any other
     provision of law (statutory or nonstatutory), including section 2241 of title 28,

11    United States Code, or any other habeas corpus provision, and sections 1361
     and 1651 of such title, a petition for review filed with an appropriate court of

12    appeals in accordance with this section shall be the sole and exclusive means
     for judicial review of an order of removal entered or issued under any

13    provision of this Act, except as provided in subsection (e).

14  REAL ID Act §106(a)(1)(B). By this amendment, Congress has deprived this Court of

15  habeas corpus jurisdiction to review an order of removal entered under the Immigration and

16  Nationality Act. Moreover, REAL ID Act § 106(b) provides that § 106(a) of the Act is

17  retroactive: "subsection (a) shall take effect upon the date of enactment of this division and

18  shall apply to cases in which the final administrative order of removal, deportation, or

19  exclusion was issued before, on, or after the date of enactment." REAL ID Act § 106(b).

20  Because Petitioner's due process claim challenges a final order of removal, this Court no

21  longer has jurisdiction over this action. However, the lack of jurisdiction in this Court, does

22  not necessarily mean that Petitioner is without a remedy.

23    In addition to stripping the district courts of jurisdiction to review orders of removal,

24  the REAL ID Act also "restored judicial review of constitutional claims and questions of law

25  presented in petitions for review of final removal orders" in the courts of appeals.

26  Fernandez-Ruiz v. Gonzales, 410 F.3d 585, 587 (9th Cir. 2005). Under the prior version of

27  8 U.S.C. § 1252(a)(2)(C), the courts of appeals were deprived of jurisdiction to review

28  removal orders entered against certain criminal aliens. But REAL ID Act § 106(a)(1)(A)(iii)

- 3 -

1   restored jurisdiction in the courts of appeals to review removal orders entered against

2   criminal aliens:

> (D) JUDICIAL REVIEW OF CERTAIN LEGAL CLAIMS. – Nothing in
> subparagraph (B) or (C), or in any other provision of this Act (other than this
> section) which limits or eliminates judicial review, shall be construed as
> precluding review of constitutional claims or questions of law raised upon a
> petition for review filed with an appropriate court of appeals in accordance
> with this section.

REAL ID Act §106(a)(1)(A)(iii); Fernandez-Ruiz, 410 F.3d at 587. Additionally, REAL ID

Act § 106(c) provides that if any § 2241 habeas corpus case "challenging a final

administrative order of removal . . . is pending in a district court on the date of enactment,

then the district court shall transfer the case . . . to the [appropriate] court of appeals." REAL

ID Act §106(c). Accordingly, Petitioner's unopposed motions to transfer will be granted and

this action will be transferred to the United States Court of Appeals for the Ninth Circuit.

   **IT IS THEREFORE ORDERED** Petitioner's Motion to Reconsider Dismissal of

Due Process Component of Claim (Doc. #18) and Renewed Motion to Reconsider Dismissal

of Due Process Claim (Doc. #22) are **granted**. Petitioner's due process claim is reinstated.

Petitioner's Motion for Hearing (Doc. #25) is **denied** as moot.

   **IT IS FURTHER ORDERED** that Petitioner's Motion to Transfer (Doc. #28) and

Renewed Motion to Transfer (Doc. #29) are **granted** and the Petition and this action shall

be **transferred as a petition for review** to the United States Court of Appeals for the Ninth

Circuit pursuant to section 106(c) of the REAL ID Act of 2005. The Clerk of Court shall

transfer this action forthwith.

   **IT IS FURTHER ORDERED** that the Stay of Removal (Doc. #24) shall remain in

effect pending further order of the United States Court of Appeals for the Ninth Circuit.


   DATED this 19th day of August, 2005.



                        _Frederick J. Martone_
                        _____
                        Frederick J. Martone
                        United States District Judge

- 4 -

# EXHIBIT
# G

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

# FILED

**MAR 2 8 2007**

**CATHY A. CATTERSON. CLERK**
**U.S. COURT OF APPEALS**

| | |
|---|---|
| ISMAEL ALFARO ALFARO,<br><br>    Petitioner,<br><br>    v.<br><br>ALBERTO R. GONZALES, Attorney<br>General,<br><br>    Respondent. | No. 05-75141<br><br>Agency No. A19-168-626<br><br>ORDER |

Before: HUG, W. FLETCHER, and BEA, Circuit Judges.

The parties have indicated that they are agreeable to mediation of this case. We encouraged mediation owing to the especially troubling circumstances involved. Mr. Alfaro-Alfaro has been a lawful permanent resident of this country since 1969. In 1979 he was convicted of forcible rape, and served his time for that criminal offense. Since that time, he appears to have led a decent and productive life. After his release from prison, Mr. Alfaro-Alfaro was not deported, but rather allowed to establish a life in this country. He married, had two citizen children now of high school and college age. Letters from his employer, pastor, and neighbors attest to his character and indicate he has held steady employment.

Mr. Alfaro-Alfaro was not detained or ordered deported upon his return from five other previous short trips to Mexico. However, in 2003, he was detained upon his return from a brief trip to Mexico, and since that time he has been imprisoned improperly under 8 U.S.C. § 1226(c) for over three years without bond in an Arizona facility, despite the fact that his family resides in California.

During his appearance before the Immigration Judge for the motion to terminate determination, Mr. Alfaro-Alfaro's attorney was not present, but rather had sent a local substitute counsel. Local counsel did not even realize the motion to terminate determination was to be made that day, and had not arranged for Mr. Alfaro-Alfaro or other live witnesses to testify. The presence of other live witnesses could well have affected the Immigration Judge's discretionary decision not to terminate removal proceedings to allow Mr. Alfaro-Alfaro to proceed with his application for naturalization, for which he is eligible. Instead, the Immigration Judge denied the motion to terminate at that time. This unusual fact situation should be considered in the exercise of prosecutorial discretion or other relief, including petitioner's release on bond. If at commencement of mediation Mr. Alfaro-Alfaro is still detained, given the length of his questionable detention, the first topic of discussion should be to make arrangements for Mr. Alfaro-Alfaro's release from custody.

We defer submission of this case pending the results of mediation.

3

# EXHIBIT

# H

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ISMAEL ALFARO ALFARO,

Petitioner/Appellant,

v.

ALBERTO R. GONZALES, et al.,

Respondents/Appellees.

C.A. No. 05-75141

D.Ct. No. 04-1115-PHX-FJM

**STIPULATED MOTION FOR
LIMITED REMAND**

Petitioner-Appellant, Ismael Alfaro-Alfaro, and Respondent-Appellees, Alberto Gonzales, et. al., ("the government"), stipulate to remand the case to the BIA under the following conditions:

Petitioner and the government agree to remand this case to the BIA for the limited purpose of reopening the proceedings to allow Petitioner-Appellant to have a hearing before an Immigration Judge in which he may renew his Motion to Terminate proceedings to allow him to apply for Naturalization. The Petitioner-Appellant and the government agree that under the terms of this limited remand, no other issues will be considered. Each party will bear its own costs and fees.

The government agrees that upon reopening of the proceedings, it will stipulate to a change of venue to San Francisco, California, where the hearing will take place.

Petitioner was released from custody on June 13, 2007. The government

agrees that it will not attempt to remove Petitioner from the United States until after

a final order is issued on the Motion to Terminate, if it is denied.

Respectfully submitted this _____ day of June, 2007.


                                    DANIEL G. KNAUSS
                                    United States Attorney
                                    District of Arizona
                                    JOHN BOYLE
                                    Chief, Appellate Section


FRANK P. SPROULS                    CYNTHIA M. PARSONS
Attorney for Petitioner             Assistant U.S. Attorney
Law Office of Ricci and Sprouls     40 North Central Avenue, Suite 1200
445 Washington Street               Phoenix, Arizona 85004-4408
San Francisco, California 94111     Telephone: (602) 514-7500
                                    Attorneys for Respondent/Appellees

# EXHIBIT
# I

LAW OFFICE OF RICCI & SPROULS
Attorney at Law
445 Washington Street
San Francisco, CA  94111
(415) 391 2100
FRANK P. SPROULS
Attorney for Respondent


IMMIGRATION AND NATURALIZATION SERVICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
SAN FRANCISCO, CALIFORNIA

Respondent
Ismael Alfaro

A19 168 626

_____/

MAY: 1, 08
Time: 1:00 a.m.
Judge: HON. BHS

## Procedural History/Overview of the Issues/Renewed Motion to Terminate (to be filed under separate cover)

The Respondent is an "arriving alien" in proceedings brought on January 12, 2004 in Eloy, AZ. (Exhibit A)

His former counsel filed a Motion to Terminate proceedings based on his prima facie eligibility for Naturalization. (Exhibit B)

The matter was set for Master Hearing and the Petitioner's counsel Steve Coughlin, who resides in San Francisco, instructed local counsel to appear for him and to simply set a date for a hearing where the Motion to

1

terminate would be meaningfully addressed.

In addition to his own testimony, Respondent contemplated that his Lawful permanent Resident wife would testify as well as his United States citizen children.

Instead, counsel was told simply that the Motion was denied - no hearing, no explanation and no meaningful appeal record. (Exhibit C)

The transcript reveals that there was no hearing at all on the Motion to Terminate. (Exhibit C)

Indeed, there is not even an on-the-record colloquy between the parties as to the relative merits of the Motion.

In the decision the Immigration Judge simply states that, "having considered all of the evidence before it, is denying the Motion to Terminate." (Exhibit D)

The Respondent, through current counsel, then filed a Writ of Habeas Corpus in the Phoenix District Court. (Exhibit E)

Respondent made two separate claims, one, (not relevant here) was that he was unconstitutionally deprived of his liberty by virtue of his being held in Mandatory Custody as an arriving alien and secondly, that he was denied due process of law when the Immigration Judge failed to conduct a hearing or meaningfully consider any evidence pursuant to the

2

Petitioner's Motion to Terminate Removal proceedings to apply for United States Citizenship.

## I. **PETITIONER WAS DENIED DUE PROCESS OF LAW BY THE IJ IN ELOY, AZ**

It is one of the anomalies of Immigration law that one can be eligible for citizenship on the one hand and ineligible for any relief on the other.

The only avenue for relief for a long time Resident is found at INA 240A (a) which requires seven years residency, however, the alien must "not have been convicted of an aggravated felony."

Next, while it is true that he committed the offense **twenty-one years** before the effective date of IIRAIRA, the law is retroactively applied.

This is so because while it is true that the Supreme Court has held that IIRAIRA cannot be apply retroactively to an alien who **pleads** guilty prior to the effective date of the Act, it does not apply to an alien like Respondent who proceeded to a jury trial. Armendiaz-Montaya v. Sonchik, 291 F.3d. 1116, 1121-1122 (9th Cir. 2002)

It was thus clear that the Petitioner's only avenue for relief was the Motion to terminate proceedings and he was denied due process in the Immigration Judge's refusal to even **_conduct_** a hearing or explain or justify his summary

3

denial.

## A. Legal standard for the denial of due process

It has been unambiguously held that aliens in deportation proceedings are entitled to both substantive and procedural due process right under our constitution. Reno v. Flores, 507 U.S. 292, 306 (1993). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation hearings."

It has also been held that the due process is offended where the Immigration Service, ignores its own precedent and ignores specific statutory grounds. Brownell v. We Shung 352 U.S. 180 (1956); Kwong Hai Chew v. Colding, 344 U.S. 590, 596 (1953).

Next, in the specific context of a Deportation/Removal hearing, due process demands that an alien facing deportation is entitled to a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf. Sanchez v. INS, 164 F.3d. 448, 450 (9th Cir. 1990); Colemenar v. INS 210 F. 3d. 967, 975 (9th Cir. 200)

In the particular case, it was piercingly obvious that the Respondent was denied due process in the sense that he received *no hearing at all* and he had **no opportunity** to present evidence on his behalf.

4

Next, it was abundantly clear that the Petitioner had a right to **meaningful** administrative review to the Board of Immigration Appeals.

However, it was argued that that Respondent had been denied the right to meaningful appellate review because both counsel and the BIA are left to speculate as to *why* the Motion was denied.

Was it because, the IJ felt that the crime was so heinous that the intervening 25 years of law abidance did not purge the taint?

Was it because Petitioner had not presented sufficient hardship to his Lawful Resident wife and United States citizen children?

Was it because he did not credit the letters of support from his priest, his employer and his friends and neighbors?

II. **REAL ID was enacted and the case was transferred to the 9th Circuit and they agreed that a denial of due process had been found.**

REAL ID was enacted while this issue was still under consideration before the District Court.

Real ID disvested the District Court of habeas jurisdiction and the matter was transferred to the 9th Circuit. (Exhibit F)

The 9th Circuit found that a denial of due process existed and the matter was remanded with specific instruction to conduct a thoroughgoing and meaningful evidentiary hearing on the Motion to Terminate. (Exhibit G)

Next, the parties agreed to a stipulated remand that held that the Petitioner was entitled to a hearing on the Motion to Terminate. (Exhibit H)

III. **THE GOVERNMENT HAS NOT CONCEDED THAT THE MATTER HAS MERIT; HOWEVER, THEY HAVE EXPLICITLY CONCEDED PRIMA FACIE ELIGIBILITY**

The procedure to terminate proceedings is explicitly authorized by the regulations and allows an Immigration Judge to terminate proceedings under 8 C.F.R. 239.2 (f) which specifically allows the IJ to:

> "terminate removal proceedings to permit the respondent to proceed to a final hearing on a pending application or petition for naturalization, when he/she has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors."

Next, in terms of prima face eligibility, it is undisputed that, in terms of 101 (a) (f) (8,) and the applicability of an aggravated felony serving as a permanent bat to a bar to finding good moral character, prior to IMMACT90, the only bar to a finding of good moral character was a conviction for murder.

6

However, IMMACT90 specifically addressed the effective date of aggravated felonies in terms of the bar to a finding of good moral character under 101 (a)(f)(8) and held that this bar only applies to convictions on or after the effective date – November 29, 1990.

The Ninth Circuit has definitely checked in and held that the aggravated felonies added by IIRAIRA, in terms of good moral character, still have an effective date of November 29, 1990. Hernandez de Anderson v. Mukasey, 497 F.3d. 927 (9th Cir. 2007);Lopez-Castellanos v. Gonzalez 437 F.3D. 848, 851 (9th Cir. 2006)

Now, there is a highly technical component to the prima face finding when an alien is in proceedings – the Government must affirmatively communicate to the Judge that the Respondent is prima facie eligible or the alien needs to obtain a Declaratory Judgment from a District Court. De Hernandez, supra at 933, quoting Matter of Cruz, 15 I& N Dec. 236 (BIA 1975).

Now, in the instant case, it is not a reasonable or intellectually responsible argument to claim that he is **not** prima facie eligible insofar one is not statutorily precluded from demonstrating good moral character in the context of Citizenship if the conviction occurred before 1990 where, as here, the alien was convicted in *1979* – eleven years before

the cut-off.

However, it is argued that the Government has affirmatively communicated prima face eligibility for relief in the sense that the US Attorney stipulated and agreed to have the case remanded for an Evidentiary hearing on the Motion to Terminate.

## CONCLUSION

Based on the above procedural history this matter must proceed to a full hearing on a Motion to Terminate proceedings to apply for Citizenship.

We will file an updated Motion with new evidence under separate cover.

Dated; _3 • 18_ 2008

Frank P. Sprouls

8

# EXHIBIT
# J

RONALD E. LE FEVRE
Chief Counsel
LESLIE UNGERMAN
Deputy Chief Counsel
JAMES B. GILDEA
Assistant Chief Counsel
U.S. Department of Homeland Security
Bureau of Immigration and Customs Enforcement
Office of the Chief Counsel
120 Montgomery Street, Suite 200
San Francisco, CA 94104
Phone: (415) 705-4613

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT, SAN FRANCISCO, CALIFORNIA

| | |
|---|---|
| In the Matter of | ) |
| | ) A 19-168-626 |
| ALFARA, Ismael, | ) |
| | ) GOVERNMENT'S OPPOSITION TO |
| | ) MOTION TO TERMINATE |
| | ) |
| Respondent | ) |
| | ) Honorable Brian H. Simpson |
| In Removal Proceedings | ) Master hearing 5/1/08, 1:00 p.m. |

This matter was remanded because respondent did not present evidence of what "exceptionally appealing or humanitarian factors" may pertain in his case, if any, at his initial merits hearings. See Attachment "A." The remand assumes that respondent will renew his motion to terminate, which he has. Respondent has presented the evidence concerning what he asserts are exceptionally appealing or humanitarian factors. When the record is complete in this regard, the matter can return to the appeal process.

However, the IJ is without authority to grant respondent's motion to terminate these proceedings based on the pendency of respondent's application for naturalization. The IJ can only do so where the DHS has communicated, affirmatively, a finding that respondent has established prima facie eligibility for naturalization. See In re Acosta Hildago, 24 I&N Dec. 103 (BIA 2007); Matter of Cruz, 15 I&N Dec. 236 (BIA 1975). The DHS does not so communicate, and views respondent as ineligible based on his very serious felony criminal conviction.

Respondent's motion to terminate should be denied.

Dated: April 1, 2008

Respectfully Submitted

JAMES B. GILDEA
Assistant Chief Counsel

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA


PATRICIA M. VROOM                                               DETAINED
CHIEF COUNSEL

By:  Robert C. Bartlemay Sr.
Assistant Chief Counsel
Department of Homeland Security
2035 North Central Avenue
Phoenix, Arizona 85004


UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA


| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| Ismael ALFARO-ALFARO ) | IN REMANDED REMOVAL PROCEEDINGS |
| ) | |
| A19-168-626 ) | |
| ) | |
| Phoenix, Arizona ) | |


DEPARTMENT OF HOMELAND SECURITY'S
MOTION FOR REMAND TO THE IMMIGRATION COURT


*attachment "A"*

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

| | |
|---|---|
| IN THE MATTER OF                )<br><br>Ismael ALFARO-ALFARO      )<br><br>                                          )<br>A19-168-626                      )<br><br>Phoenix, Arizona               )<br>                                          ) | IN REMANDED REMOVAL PROCEEDINGS |

DEPARTMENT OF HOMELAND SECURITY'S
MOTION FOR REMAND TO THE IMMIGRATION COURT

Pursuant to the parties' Stipulated Motion for Limited Remand, the United States

Court of Appeals for the Ninth Circuit ("Ninth Circuit") remanded the foregoing case to

the Board of Immigration Appeals ("Board" or "BIA") on August 29, 2007. The

Department of Homeland Security ("the Department") hereby requests further remand to

the immigration court.

STATEMENT OF THE CASE

Respondent is a 54-year-old male, native and citizen of Mexico. (Tr. at 17-8 and

29.) On February 20, 1969, Respondent was granted lawful permanent resident status in

the United States. (Tr. at 17-8.) On August 3, 1979, Respondent was convicted in

Superior Court, State of California, Los Angeles County, for the offense of "Forcible

Rape," a felony, in violation of California Penal Code sections 261(2) and 264. (Exh. 3.)

He was sentenced to five years imprisonment. (*Id.*) On December 15, 2003, Respondent

applied for admission at the Oakland International Airport. (*Id.*) He was paroled into the

United States for deferred inspection that same date. On January 12, 2004, Respondent's

parole was revoked. (Id.)

The Department issued a Notice to Appear (NTA) on January 12, 2004. (Exh.1.)

The Notice to Appear listed Respondent's alienage and conviction, and charged

Respondent with removability under sections 212(a)(2)(A)(i)(I), alien convicted of a

crime involving moral turpitude. (Id.) On February 27, 2004, Respondent moved to

terminate the proceedings under 8 C.F.R. § 239.2(f)[1] because he has an application for

naturalization pending. (Exh. 2.) On March 5, 2004, the Department opposed the motion

to terminate. (Exh. 4.) In resumed removal proceedings on March 24, 2004, Respondent

admitted all allegations on the NTA; and he conceded the charge of removability. (Tr. at

17-8.) The immigration court then sustained the charge. (Id.)

In resumed removal proceedings on April 15, 2004, the immigration court denied

the motion to terminate the proceedings to allow the application for naturalization to be

adjudicated. (Oral Decision of the Immigration Judge, at 3.) The immigration court

found that the respondent was not eligible for any forms of relief and ordered him

removed to Mexico. (Oral Decision of the Immigration Judge, at 3-4.) Respondent

reserved appeal. Respondent's appeal was dismissed on September 3, 2004. The Board

stated that although the Department had communicated through its opposition to the

motion to terminate Respondent's eligibility for naturalization, the immigration court

properly denied the motion as a matter of discretion. The Respondent thereafter filed a

petition for review with the U.S. Ninth Circuit Court of Appeals. The parties sought a

stipulated motion for remand to the Board. The parties' agreement stated the case should

be further remanded to the immigration court to allow the Respondent to renew his

---

[1] 8 C.F.R. § 239.2(f) has been replaced by 8 C.F.R. § 1239.2(f). The new section is identical to the previous section.

3

motion to terminate. The parties also agreed to change venue in the matter to San Francisco, California for the hearing. In keeping with the above referenced agreement, the Department requests the case be remanded to the immigration court for the said hearing.

### STATEMENT OF THE FACTS

Respondent is a 54-year-old male, native and citizen of Mexico. (Tr. At 17-8 and 29.) On February 20, 1969, Respondent was granted lawful permanent resident status in the United States. (Tr. at 17-8.) On August 3, 1979, Respondent was convicted in Superior Court, State of California, Los Angeles County, for the offense of Forcible Rape, a felony, in violation of California Penal Code sections 261(2) and 264. He was sentenced to five years imprisonment. (Exh. 3.) On December 15, 2003, Respondent applied for admission at the Oakland International Airport. (*Id.*) He was paroled into the United States for deferred inspection that same date. On January 12, 2004, Respondent's parole was revoked. (*Id.*) On February 27, 2004, Respondent moved to terminate the proceedings under 8 C.F.R. § 239.2(f) because he has an application for naturalization pending. (Exh. 2.) On March 5, 2004, the Department opposed the motion to terminate. (Exh. 4.)

In resumed removal proceedings on April 15, 2004, the immigration court denied the motion to terminate the proceedings to allow the application for naturalization to be adjudicated. (Oral Decision of the Immigration Judge, at 3.) The immigration court found that Respondent was not eligible for any forms of relief and ordered him removed to Mexico. (Oral Decision of the Immigration Judge, at 3-4.)

### LEGAL ARGUMENT

The immigration court may terminate removal proceedings to permit Respondent "to proceed to a final hearing on a pending application or petition for naturalization when

4

the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors." *See* 8 C.F.R. § 1239.2(f). In the case of *In re Acosta Hildago*, 24 I&N Dec. 103 (BIA 2007), the Board upheld its decision in *Matter of Cruz*, 15 I&N Dec. 236 (BIA 1975) that the Board and the immigration court is without jurisdiction to determine an alien's eligibility for naturalization and require some form of affirmative communication from the Department as to whether the alien has established prima facie eligibility for naturalization. (*Id.* at 105-6.)

In denying the motion to terminate the proceedings, the immigration court did not conduct a hearing to determine what "exceptionally appealing or humanitarian factors" were present in Respondent's case. The immigration court should have allowed Respondent the opportunity to present evidence on this issue. Remand is appropriate for the limited purpose of allowing Respondent to renew his motion to terminate and present such evidence if it exists.

<div align="center">CONCLUSION</div>

For the foregoing reasons, the Department of Homeland Security's Motion for Remand to the immigration court should be GRANTED.

Respectfully submitted this 26th day of October, 2007

                        PATRICIA M. VROOM
                        CHIEF COUNSEL


                        _____
                        Robert C. Bartlemay Sr.
                        Assistant Chief Counsel

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ONE (1) COPY OF THE ATTACHED
DEPARTMENT OF HOMELAND SECURITY'S MOTION FOR REMAND TO THE
IMMIGRATION COURT WAS SERVED UPON Respondent (or his representative) by
placing it in a sealed envelope, via either U.S. Postal Service Mail or Inter Office Mail at
1705 Hanna Road, Eloy, Arizona, 85231, addressed as follows:

> Frank P. Sprouls, Esq.
> Ricci & Sprouls PC
> 445 Washington Street
> San Francisco, CA 94111

> _____
> Robert C. Bartlemay Sr.
> Assistant Chief Counsel
> Eloy, Arizona

April 1, 2008 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | **Deleted:** October 26, 2007 |

6

CERTIFICATE OF SERVICE

The undersigned hereby declares as follows:

I am a citizen of the United States over the age of 18 years and not a party to the captioned action. My business address is 120 Montgomery Street, Suite 200, San Francisco, California 94104.

"GOVERNMENT'S OPPOSITION"

I served a true and correct copy of the foregoing document by placing said copy in the U.S. mail on this date, postage prepaid, addressed as follows.

Frank P. Sprouls, Esq.
445 Washington Street
San Francisco, California 94111

Dated: April 1, 2008
      San Francisco, California

_____
JAMES B. GILDEA
Assistant Chief Counsel
Department of Homeland Security

# EXHIBIT K

*F1c*

LAW OFFICE OF RICCI & SPROULS
Attorney at Law
445 Washington Street
San Francisco, CA  94111
(415) 391 2100
FRANK P. SPROULS
Attorney for Respondent


IMMIGRATION AND NATURALIZATION SERVICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
SAN FRANCISCO, CALIFORNIA

MAY: 1, 08
Time: 1:00 a.m.
Judge: HON. BHS

Respondent
Ismael Alfaro

A19 168 626

_____/

### RESPONSE TO GOVERNMENT OPPOSITION TO MOTION TO TERMINATE TO

### APPLY FOR CITIZENSHIP

First, the Government either did not read the Ninth
Circuit Order or they did not understand it.

The matter was **not** remanded because Respondent did not
present evidence of his exceptional and appealing
humanitarian factors, it was remanded because he was denied
due process when the IJ did not even address his incredibly
compelling evidence of exceptional and appealing
humanitarian factors.

1

Next, the Government motion betrays a fatal misapprehension of the distinction between the *a priori* concept of prima facie eligibility and the exercise of discretion.

This procedure herein is authorized by the regulations and allows an Immigration Judge to terminate proceedings under 8 C.F.R. 239.2 (f) which specifically allows the IJ to:

"terminate removal proceedings to permit the respondent to proceed to a final hearing on a pending application or petition for naturalization, when he/she has established *prima facie eligibility* for naturalization and the matter involves exceptionally appealing or humanitarian factors

A useful analogy would be an alien with twelve years unlawful presence in the United States, no disqualifying convictions and a perfectly healthy, happy, well adjusted 5 year old United State citizen child.

That alien is *prima facie* eligible for Cancellation; however it is undisputed that the Cancellation case will be denied.

Now, in the instant case, it is not a reasonable or intellectually responsible argument to claim that he is **not** prima facie eligible insofar one is not statutorily precluded from demonstrating good moral character in the context of

2

Citizenship if the conviction occurred before 1990 and where, as here, the alien was convicted in *1979* – eleven years before the cut-off. Hernandez de Anderson v. Mukasey, 497 F.3d. 927 (9th Cir. 2007);Lopez-Castellanos v. Gonzalez 437 F.3D. 848, 851 (9th Cir. 2006)

The Government position is in direct contrast to black-letter Ninth Circuit law.

However, in this case it is argued that the Government **has** affirmatively communicated prima face eligibility for relief in the sense that the **US Attorney** stipulated and agreed to have the case remanded for an Evidentiary hearing on the Motion to Terminate.

Next, In Re Acosta Hidalgo, 24 IN Dec. 103 (BIA 2007) states that if the Government does not affirmatively agree to prima facie eligibility, the alien can simply obtain an order from a Federal Court.

Here, it is argued that a Federal Court (The Ninth Circuit) has made a specific finding that he is prima face eligible by remanding this case for a hearing on the Motion to Terminate.

However, if the District Counsel would like our office to file a Motion for a Declaratory Judgment with an Order stating, **"Good Cause appearing, the District Court hereby finds that "1979 is before 1990",** we would be happy to do so.

3

I can state though, that the ears of the Office of the District Counsel will be burning when the Federal Judge realizes that we have been forced to burden their calendar with such a simple and obvious and wholly unnecessary action.

Dated: _____ 2008

Frank P. Sprouls

**Style Definition:** Normal: Font: 10 pt

**Formatted:** Bottom: 1"

## PROOF OF SERVICE --

Case name: ICFIMO

A ) 9 - )68 - 626

I, the undersigned do hereby declare and affirm as follows;

I am employed at the law Office of Ricci Sprouls PC
AT 445 WASHINGTON STREET, SAN FRANCISCO, CA  and I am not a
party to this action.

That on 4/1 - 08

I caused to be served on the following interested parties -

RESPONSE TO COU'T OPPOSITION

BY _____ FEDERAL EXPRESS MAIL
BY _____ ✓ ─ PERSONAL DELIVERY
BY ___✓_____ REGULAR MAIL


OFFICE OF THE DISTRICT COUNSEL
IMMIGRATION AND NATURLIZATION SERVICE
_____ District Counsel
        120 Montgomery Street – 2nd Floor
        San Francisco, CA

Dated: 4/1 08

_CA.fl_

William Sprouls

# EXHIBIT L

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
120 MONTGOMERY ST., SUITE 800
SAN FRANCISCO, CALIFORNIA 94104

RICCI SPROULS PC
SPROULS, FRANK P.
445 WASHINGTON STREET
SAN FRANCISCO, CALIFORNIA 94111

Date: Apr 14, 2008

File A19-168-626

In the Matter of:
ALFARO-ALFARO, ISMAEL

_____ Attached is a copy of the written decision of the Immigration Judge.
This decision is final unless an appeal is taken to the Board of
Immigration Appeals.  The enclosed copies of FORM EOIR 26,
Notice of Appeal, and FORM EOIR 27, Notice of Entry as Attorney or
Representative, properly executed, must be filed with the Board of
Immigration Appeals on or before _____.
The appeal must be accompanied by proof of paid fee ($110.00).

_____ Enclosed is a copy of the oral decision.

_____ Enclosed is a transcript of the testimony of record.

_____ You are granted until _____ to submit a brief
to this office in support of your appeal.

_____ Opposing counsel is granted until _____ to submit a
brief in opposition to the appeal.

__✓__ Enclosed is a copy of the order/decision of the Immigration Judge.

All papers filed with the Court shall be accompanied by proof
of service upon opposing counsel.

Sincerely,

Immigration Court Clerk                    UL

cc: GILDEA, JAMES B.
120 MONTGOMERY STREET, STE 200
SAN FRANCISCO, CALIFORNIA 94104

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE OF IMMIGRATION REVIEW
IMMIGRATION COURT
SAN FRANCISCO, CALIFORNIA

In the Matter of                          Case No.      **A#19-168-626**
**ALFARO-ALFARO, ISMAEL**
Respondent

Hearing Date:    May 1, 2008 (M)

## ORDER OF THE IMMIGRATION JUDGE

Upon consideration of **(X)** Respondent's/Counsel's   ( )Department of Homeland Security's motion to/for :

      ( )    Change Venue to:
      ( )    Motion to Advance/Re-Set to Master Calendar
      ( )    Extension to file documents
      ( )    Telephonic Appearance/Witness Testimony:
      ( )    Administratively Close Proceedings
      **(X)**    **Dismiss/Terminate Removal/Deportation/Asylum/Exclusion Proceedings**
      ( )    Withdraw as Attorney of Record:
      ( )    Reopen/Reconsider the Immigration Judge's Decision
      ( )    Other:

Filed in the above entitled matter, it is HEREBY ORDERED that the Motion be:

    (  )    GRANTED                ( ✓ )    DENIED

for the reason (s) set forth below:

*There is no evidence of any communication
by DHS that the Respondent has established prima
facie eligibility for naturalization.*

Date: *April 9, 2008*                          Brian H. Simpson
                                            Immigration Judge

# EXHIBIT
# M

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
120 MONTGOMERY ST., SUITE 800
SAN FRANCISCO, CALIFORNIA 94104

*APR 15 2008*

RE: ALFARO-ALFARO, ISMAEL
FILE: A19-168-626

DATE: Apr 14, 2008

TO:          RICCI SPROULS PC
             SPROULS, FRANK P.
             445 WASHINGTON STREET
             SAN FRANCISCO, CALIFORNIA 94111

Please take notice that the above captioned case has been scheduled for a
MASTER hearing before the Immigration Court on Jul 17, 2008 at 1:00 P.M. at:

120 MONTGOMERY ST., SUITE 800, COURTROOM 5
SAN FRANCISCO, CALIFORNIA 94104

You may be represented in these proceedings, at no expense to the
Government, by an attorney or other individual who is authorized and qualified
to represent persons before an Immigration Court. Your hearing date has not
been scheduled earlier than 10 days from the date of service of the Notice to
Appear in order to permit you the opportunity to obtain an attorney or
representative. If you wish to be represented, your attorney or representative
must appear with you at the hearing prepared to proceed. You can request an
earlier hearing in writing.

Failure to appear at your hearing except for exceptional circumstances
may result in one or more of the following actions: (1) You may be taken into
custody by the Department of Homeland Security and held for further
action. OR (2) Your hearing may be held in your absence under section 240(b)(5)
of the Immigration and Nationality Act. An order of removal will be entered
against you if the Department of Homeland Security established by
clear, unequivocal and convincing evidence that a) you or your attorney has
been provided this notice and b) you are removable.

IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT
CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION
COURT SAN FRANCISCO, CA THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR
TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS.
EVERYTIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE
COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE
ON THE ATTACHED FORM EOIR-33. ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM
THE COURT WHERE YOU ARE SCHEDULED TO APPEAR. IN THE EVENT YOU ARE UNABLE TO
OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW
ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE
OF ADDRESS." CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE
SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED
SUFFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.

A list of free legal service providers has been given to you. For
information regarding the status of your case, call toll free 1-800-898-7180
or 703-305-1662.

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL (X)   PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [X] ALIEN's ATT/REP  [X] DHS
DATE: 4|14|08        BY: COURT STAFF ___703___        V3
    Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [X] Other

**PROOF OF SERVICE –**
**Case name   - Alfaro**
I, William Sprouls, the undersigned do hereby declare and affirm as follows;

I am employed at the law Office of Ricci and Sprouls at 445 Washington Street, San Francisco, CA and I am not a party to this action.

That on 04/25/08

Request for Declaratory Judgement

----x-----Regular mail
___ ____E- File

--- X--- Personal Delivery To: _____

__x____US ATTORNEYS OFFICE
CIVIL DIVISION
150 Almaden Suite 900
San Jose, CA 95113


___
DISTRICT DIRECTOR INS
CIIZENSHIP UNIT
630 SANSOME STREET
SAN FRANCISCO, CA 94111

Dated  4/25/                    2008
WILLIAM SPROULS