United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISMAEL ALFARO,<br><br>    Petitioner,<br><br>  v.<br><br>MICHAEL MUKASEY, Attorney General of the United States, et al.,<br><br>    Respondents. | No. C 08-02171 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Respondents' Motion to Dismiss** |

     Petitioner, a 58-year-old citizen of Mexico who has been a legal permanent resident of the United States since 1969 and was recently ordered removed from this country based on a thirty-year old conviction for forcible rape for which he was sentenced to five years imprisonment, has filed with this court a "Request for Declaratory Judgment Regarding Petitioner's Prima Facie Eligibility for U.S. Citizenship" (hereinafter referred to as the "Complaint").  Now before the court is respondents' motion to dismiss, arguing that in light of the transfer of naturalization authority in 1990 from the federal district courts to the Attorney General, district courts no longer have authority to make declarations of prima facie eligibility for naturalization.  Having considered the parties submissions and oral arguments, the court enters the following memorandum and order.

PROCEDURAL HISTORY

This case arrives here after a long and complicated procedural history. Returning from a trip to Mexico in December 2003, petitioner Ismael Alfaro ("Alfaro") was detained and placed into removal proceedings. A Notice to Appear was issued January 12, 2004. Complaint, Exh. A. It charged him as being removable under Immigration and Nationality Act ("INA") § 212(a)(2)(A)(i)(I) as an alien convicted of a crime involving moral turpitude. Id. Almost thirty years ago in 1979, petitioner was convicted by a jury for forcible rape pursuant to California Penal Code §§ 261(2) and 264.1. Id.

Removal proceedings were held before immigration judge ("IJ") John W. Davis in Eloy, Arizona. Alfaro's counsel at the time filed a motion to terminate proceedings to permit Alfaro to proceed on a pending application for naturalization. Complaint, Exh. B. The motion to terminate removal proceedings was made pursuant to 8 C.F.R. § 1239.2(f). The Department of Homeland Security ("DHS") opposed Alfaro's motion to terminate. Pet.'s Opp., Exh. A.[1] In its opposition brief DHS stated, "*While [Alfaro] may be prima facie eligible for naturalization*," his case did not present "exceptionally appealing or humanitarian factors" warranting termination of removal proceedings. Id. at 5 (emphasis added).

The IJ issued an order of removal on April 15, 2004. Complaint, Exh. D. He denied Alfaro's motion to terminate giving no reason other than stating that he had "considered all the evidence before it." Id. at 3. The IJ went on to determine that because Alfaro's conviction for forcible rape was an aggravated felony and because the conviction was by a jury, Alfaro was ineligible for any forms of relief, including relief under former INA § 212(c). Compare St. Cyr v. INS, 533 U.S. 289 (2001) (holding that provisions of AEDPA and IRAIRA repealing discretionary relief from deportation under section 212(c) did not apply retroactively to alien who pled guilty to a deportable crime prior to statutes' enactment) with Armendariz-Montoya v. Sonchik, 291 F.3d 1116, 1121-22 (9th Cir. 2002) (declining to extend St. Cyr to situation in which conviction was the result of a jury trial). The IJ ordered Alfaro to be removed from the United States.

1    Alfaro appealed the IJ's order of removal to the Board of Immigration Appeals ("BIA").
2 Pet.'s Opp., Exh. B. The BIA dismissed the appeal on September 3, 2004. It stated that "*[a]lthough*
3 *[DHS] . . . communicated the respondent's eligibility for naturalization* per Matter of Cruz, 15 I&N
4 Dec. 236 (BIA 1975), in its opposition to the respondent's motion to terminate proceedings, we find
5 that the IJ properly declined to terminate the proceedings in the exercise of discretion." Id.
6 (emphasis added).

7    His appeal at the BIA having been dismissed, Alfaro appealed further to the District Court of
8 Arizona. Complaint, Exh. E. Upon Alfaro's motion, the district court eventually transferred the
9 case to the Ninth Circuit pursuant to the Real ID Act of 2005, which lodged exclusive jurisdiction to
10 review an order of removal with the court of appeals, 8 U.S.C. § 1252(a)(5), and was retroactive to
11 orders entered prior to the Act's effective date. Complaint, Exh. F.

12    After the case was transferred from the District Court of Arizona to the Ninth Circuit, the
13 circuit panel consisting of Judges Procter Hug, William Fletcher and Carlos Bea issued an order
14 "defer[ring] submission of [the] case pending the results of mediation." Complaint, Exh. G at 3.
15 The Ninth Circuit "encouraged mediation owing to the especially troubling circumstances involved."
16 Id. at 1. The circuit observed,

> Mr. Alfaro-Alfaro has been a lawful permanent resident of this country since 1969.
> In 1979 he was convicted of forcible rape, and served his time for that criminal
> offense. Since that time, he appears to have led a decent and productive life. After
> his release from prison, Mr. Alfaro-Alfaro was not deported, but rather allowed to
> establish a life in this country. He married, had two citizen children now of high
> school and college age. Letters from his employer, pastor, and neighbors attest to
> his character and indicate he has held steady employment.

21 Id. The Ninth Circuit further noted,

> During his appearance before the Immigration Judge for the motion to terminate
> determination, Mr. Alfaro-Alfaro's attorney was not present, but rather had sent a
> local substitute counsel. Local counsel did not even realize the motion to terminate
> determination was to be made that day, and had not arranged for Mr. Alfaro-Alfaro
> or other live witnesses to testify. The presence of other live witnesses could well
> have affected the Immigration Judge's discretionary decision not to terminate
> removal proceedings to allow Mr. Alfaro-Alfaro to proceed with his application for
> naturalization, *for which he is eligible*. Instead, the Immigration Judge denied the
> motion to terminate at that time. This unusual fact situation should be considered in
> the exercise of prosecutorial discretion or other relief . . ."

Id. at 2 (emphasis added).

3

The parties participated in mediation and ultimately entered into a "Stipulated Motion for Limited Remand." Complaint, Exh. H. The stipulation stated,

> Petitioner and the government agree to remand this case to the BIA for the limited purpose of reopening the proceedings to allow Petitioner-Appellant to have a hearing before the Immigration Judge in which he may renew his Motion to Terminate proceedings to allow him to apply for Naturalization. The Petitioner-Appellant and the government agree that under the terms of this limited remand, no other issues will be considered.

Id. at 1. The parties also stipulated to a change of venue to San Francisco, California for the reopened proceedings. Id.

Pursuant to the parties' stipulation, the Ninth Circuit remanded the case to the BIA. At the BIA, DHS moved for further remand to the immigration court. Complaint, Exh. J, Attachment A. In its motion for remand, DHS recognized that in previously dismissing Alfaro's appeal, the BIA had "stated that *although [DHS] had communicated through its opposition to the motion to terminate Respondent's eligibility for naturalization*, the immigration court properly denied the motion as a matter of discretion." Id. at 3 (emphasis added). DHS further argued to the BIA that,

> In denying the motion to terminate the proceedings, the immigration court did not conduct a hearing to determine what "exceptionally appealing or humanitarian factors" were present in Respondent's case. The immigration court should have allowed Respondent the opportunity to present evidence on this issue. Remand is appropriate for the limited purpose of allowing Respondent to renew his motion to terminate and present such evidence if it exists.

Id. at 4.

In remanded proceedings before IJ Brian H. Simpson in San Francisco, Alfaro renewed his motion to terminate and DHS opposed that motion. DHS's opposition, however, was not based solely on the absence of "exceptionally appealing or humanitarian factors." Rather, DHS now took the additional position that Alfaro was not prima facie eligible for naturalization. Complaint, Exh. J at 1 ("DHS does not . . . communicate" "a finding that [Alfaro] has established prima facie eligibility" and "views [Alfaro] as ineligible based on his very serious felony criminal conviction"). DHS adopted this position despite having already indicated in the initial immigration proceedings that Alfaro "may be prima facie eligible for naturalization," despite the BIA's recognition that this statement constituted a communication from DHS that Alfaro was prima facie eligible, despite

4

DHS's own recognition that the BIA had interpreted its statement as such, and despite the Ninth Circuit panel's belief that Alfaro was eligible to naturalize.

The IJ on April 9, 2008 denied Alfaro's renewed motion to terminate removal proceedings stating, "[t]here is no evidence of any communication by DHS that the Respondent has established prima facie eligibility for naturalization." Complaint, Exh. L.

On April 25, 2008 Alfaro petitioned this court for a "Request for Declaratory Judgment Regarding Petitioner's Prima Facie Eligibility for U.S. Citizenship." As stated in his opposition to the government's motion to dismiss, Alfaro asks this court for two alternative forms of relief: (1) declare that the government has conceded that Alfaro is prima facie eligible for citizenship, or (2) declare that Alfaro is prima facie eligible for citizenship. In addition to this declaratory relief, Alfaro asks this court to order the IJ to conduct an evidentiary hearing to determine whether his case involves "exceptionally appealing or humanitarian factors" warranting a discretionary termination of removal proceedings pursuant to 8 C.F.R. § 1239.2(f).

Now before the court is the government's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1).

DISCUSSION

Until 1990, federal district courts had authority to naturalize persons as citizens of the United States in the first instance. Hernandez de Anderson v. Gonzales, 497 F.3d 927, 932 (9th Cir. 2007). The Immigration Act of 1990 transferred that authority from the district courts to the Attorney General. Id.; Pub. L. No. 101-649, § 401, 104 Stat. 4978, 5038; 8 U.S.C. § 1421 ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General"). On March 1, 2003, DHS and its component CIS, assumed delegated responsibility for adjudication of naturalization applications. 6 U.S.C. § 271(b)(2).

The authority to adjudicate naturalization applications is limited by 8 U.S.C. § 1429 which states, "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding." The Ninth Circuit has stated that "[t]he natural

reading of [§ 1429] is that removal proceedings and final removal orders are to take precedence over naturalization applications." Hernandez de Anderson, 497 F.3d at 933.

Under certain circumstances, an IJ may terminate removal proceedings to allow an alien's naturalization application to go forward. The governing regulation, 8 C.F.R. § 1239.2(f), states:

> Termination of removal proceedings by immigration judge. An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors; in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

In Matter of Cruz, 15 I. & N. Dec. 236 (BIA 1975), decided at a time when district courts still had authority to naturalize persons in the first instance, the BIA interpreted the "prima facie eligibility" requirement of 8 C.F.R. § 242.7(a), the materially identical predecessor to § 1239.2(f). The BIA in Matter of Cruz held that aliens seeking termination of deportation proceedings must establish prima facie eligibility through methods outside the deportation proceedings because neither the BIA nor immigration judges have authority with respect to the naturalization of aliens. Matter of Cruz, 15 I. & N. Dec. at 237; see also Hernandez de Anderson, 497 F.3d at 933. The BIA held that prima facie eligibility could be established in two ways—either by obtaining an "affirmative communication" from the INS (which has since been replaced by DHS), or a declaration of a federal district court that the alien would be eligible for naturalization but for the pendency of the deportation proceedings. Matter of Cruz, 15 I. & N. Dec. at 237. The BIA has recently affirmed its interpretation that because the BIA and immigration judges lack authority to adjudicate applications for naturalization, neither the BIA nor immigration judges have comparable authority to determine prima facie eligibility for naturalization under 8 C.F.R. § 1239.2(f). In re Victor Acosta Hidalgo, 24 I. & N. Dec. 103 (BIA 2007).

The Ninth Circuit has considered the issue of whether the BIA's interpretation of 8 C.F.R. § 1239.2(f) in Matter of Cruz and Acosta Hidalgo is "plainly erroneous or inconsistent with the regulation." Hernandez de Anderson, 497 F.3d at 934. The court concluded that neither was the case. Id. According to the Ninth Circuit, "the BIA's interpretation requiring an alien to have 'established' eligibility prior to, and outside, the proceedings with a statement by the governmental

6

1  authority responsible for considering naturalization applications [such as DHS] is not a plainly
2  erroneous interpretation of the regulation." Id. Addressing the concern that by refusing to provide
3  statements regarding prima facie eligibility, DHS can prevent an IJ from exercising discretion to
4  terminate proceedings, the Ninth Circuit noted that such "veto power" is not inconsistent with 8
5  C.F.R. § 1239.2(f). Id. at 934–35.

6  Significantly, the Ninth Circuit in Hernandez de Anderson refused to answer the question of
7  whether a declaration from a district court would be sufficient to establish prima facie eligibility for
8  purposes of § 1239.2(f). On the one hand, the Ninth Circuit stated that "[f]ollowing the transfer of
9  authority over naturalization from the federal district courts to the Attorney General in 1990, several
10 courts including our own have questioned the vitality" of that portion of Matter of Cruz providing
11 that prima facie eligibility may be established by obtaining a declaration from a district court. Id. at
12 933. On the other hand, the Ninth Circuit noted that "[w]ithout citing authority directly in support,
13 the BIA assert[ed] in Acosta Hidalgo that district courts 'no longer have authority to make decisions
14 as to an alien's prima facie eligibility for citizenship.'" Id. at 934 n.2. "Because the question is not
15 squarely presented in this case," however, the Ninth Circuit "express[ed] no opinion concerning the
16 BIA's assertion." Id. Although some courts have answered the question in the negative[2], whether
17 district courts have authority to declare prima facie eligibility for naturalization remains an open
18 question in the Ninth Circuit.

19 In light of the uncertainty concerning this court's authority to declare Alfaro's prima facie
20 eligibility for naturalization, and given the unusual procedural route by which this case arrived, the
21 court advised Alfaro's counsel at the hearing on this motion to request that the Ninth Circuit reopen
22 Alfaro's case. The court instructed counsel that it would hold this case and defendant's motion to
23 dismiss in abeyance pending the outcome of further proceedings at the Ninth Circuit. The court
24 understands that CIS has scheduled a naturalization examination for September. The court
25 encourages Alfaro to attend this examination so that he may pursue all avenues of relief that may be
26 potentially available to him.

7

CONCLUSION

For the reasons stated above, the court declines to rule on defendant's motion to dismiss at this time. The case and defendant's motion are held in abeyance pending the outcome of further proceedings at the Ninth Circuit. The matter is continued to November 17, 2008 at 3:00 pm for further status conference.

IT IS SO ORDERED.

Dated: August 25, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# ENDNOTES

1. "Pet.'s Opp." refers to Petitioner's Opposition to Respondent's Motion to Dismiss.

2. See Saba-Bakare v. Chertoff, 507 F.3d 227, 341 (5th Cir. 2007) ("CIS argues that transfer of naturalization authority in the first instance from federal district courts to the Attorney General renders the part of Matter of Cruz that states that a court can make a determination of prima face eligibility for naturalization no longer the rule. We agree."); Cuong Quang Le v. McNamee, 2006 WL 3004524, *5 (D. Or. Oct. 20, 2006) (Brown, J.) ("the Court concludes it lacks jurisdiction . . . to declare whether Plaintiff is prima facie eligible for naturalization"); Fuks v. Devine, 2006 WL 2051321, *6 (N.D. Ill. July 20, 2006) (Aspen, J.) ("We cannot review Fuks' prima facie eligibility in the first instance because Congress vested sole authority to naturalize in the Attorney General").